WISCONSIN POWER & LIGHT COMPANY, Appellant, vs.
COLUMBIA COUNTY, Respondent.

*December 6, 1957—January 7, 1958.*

For the appellant there was a brief by *Schubring, Ryan, Petersen & Sutherland,* and oral argument by *William Ryan* and *James C. Herrick,* all of Madison.

For the respondent there was a brief and oral argument by *Howard Latton,* district attorney, and *Arno J. Miller,* assistant district attorney.

WINGERT, J. Appellant contends that the facts stated in the complaint constitute a cause of action on each of three grounds: (1) A taking of plaintiff's property for public use, for which plaintiff is entitled to just compensation under sec. 13, art. I, Wis. Const., (2) a trespass on plaintiff's property, and (3) an actionable nuisance. We are of opinion, as was the learned circuit judge, that no cause of action is stated on any theory.

We note at the outset that the complaint does not allege that defendant intended to invade or affect plaintiff's property, nor that defendant had any reason to anticipate that the deposit of road material on the swampy ground would damage plaintiff's tower, nor that defendant was negligent in any respect. The liberal construction to which a pleading is entitled on demurrer does not warrant reading those elements into the complaint, and hence we must assume they did not exist.

(1) *Taking for public use.* It is not asserted that defendant removed, seized, or touched the tower. In substance the allegation is only that inanimate forces set in motion by defendant some distance from the tower eventually damaged it to an extent which destroyed its utility. Neither is it alleged that plaintiff owned the land which was dislocated; and while we may infer that the tower was there lawfully, there is no ground for attributing to plaintiff any interest in the land other than a mere easement or license to maintain the tower thereon.

The tower was not taken for public use in the usual sense of those words. Neither title nor possession was appropriated. The tower was not put to use in connection with the highway project. It was merely damaged by accident, to an extent practically equivalent to destruction.

Land may be taken for public purposes, within the meaning of the constitutional provision, without actual occupancy or seizure by the taker.

"The courts have held that the deprivation of the former owner rather than the accretion of a right or interest to the sovereign constitutes the taking. Governmental action short of acquisition of title or occupancy has been held, if its effects are so complete as to deprive the owner of all or most of his interest in the subject matter, to amount to a taking." *United States v. General Motors Corp.* 323 U. S. 373, 378, 65 Sup. Ct. 357, 89 L. Ed. 311.

Thus land may be "taken" by flooding it with water impounded by a dam, *Arimond v. Green Bay & Mississippi Canal Co.* 31 Wis. 316, 335, *Benka v. Consolidated Water Power Co.* 198 Wis. 472, 474, 224 N. W. 718, or by covering it with a permanent embankment of earth, *Olen v. Waupaca County,* 238 Wis. 442, 449, 300 N. W. 178, or by removing lateral support by reducing the grade of a street so that the adjoining owner's soil slides down into the street. *Dahlman v. Milwaukee,* 131 Wis. 427, 438–440, 110 N. W. 479, 111 N. W. 675. Even where the owner is not excluded from the surface of the land, a "taking" may result from raising the water level of a river so that the resulting higher level of percolating water so moistens the soil as to destroy its agricultural value. *Price v. Marinette & M. P. Co.* 197 Wis. 25, 27, 221 N. W. 381; *United States v. Kansas City Ins. Co.* 339 U. S. 799, 810, 70 Sup. Ct. 885, 94 L. Ed. 1277.[1]

Personalty as well as land is "property" within the protection of the constitutional provision. Thus destruction of fixtures and equipment in a building, where incidental to occupancy of the building by the government, is tantamount to a taking of such fixtures and equipment, whether they be considered as part of the real estate or as personal property.

---

[1] Cf., *United States v. Willow River Power Co.* 324 U. S. 499, 65 Sup. Ct. 761, 89 L. Ed. 1101, and *Horstmann Co. v. United States,* 257 U. S. 138, 146, 42 Sup. Ct. 58, 66 L. Ed. 171, where somewhat similar injuries to real estate were treated as incidental damage and not a taking for public use.

*United States v. General Motors Corp.* 323 U. S. 373, 384, 65 Sup. Ct. 357, 89 L. Ed. 311.

On the other hand mere consequential damage to property resulting from governmental action is not a taking thereof. Sec. 13, art. I, Wis. Const., like its equivalent in the federal constitution, "does not undertake, . . . to socialize all losses, but only those which result from a taking of property." *United States v. Willow River Co.* 324 U. S. 499, 502, 65 Sup. Ct. 761, 89 L. Ed. 1101. Thus impairment of the value of plaintiff's farm by odors from a municipal sewerage-disposal plant is not a taking. *Hasslinger v. Hartland,* 234 Wis. 201, 206, 290 N. W. 647. Nor is partial obstruction of ingress to and egress from plaintiff's property, and the view therefrom, by a municipal shelter a taking of the property. *Randall v. Milwaukee,* 212 Wis. 374, 382, 383, 249 N. W. 73. See also *State ex rel. Saveland P. H. Corp. v. Wieland,* 269 Wis. 262, 267, 69 N. W. (2d) 217. In this connection it is important to observe that while the constitutions of many states provide expressly that private property shall not be taken *or damaged* for public use without just compensation (2 Nichols, Eminent Domain (3d ed.), p. 324, sec. 6.44), that of Wisconsin provides only that "the property of no person shall be *taken* for public use without just compensation therefor" (sec. 13, art. I, Wis. Const.) without mention of damage. Thus decisions from states having the broader constitutional provisions are not pertinent here, where there is in issue only damage, without appropriation to the public purpose. *Randall v. Milwaukee,* 212 Wis. 374, 383, 249 N. W. 73.

While as pointed out above, destruction of property or such damage as to render it worthless may be a taking of the property, depending on the circumstances, it is clear that not every such injury to or even destruction of property by a public agency is a taking within the meaning of the constitutional provision. For example, an automobile damaged in

an accidental collision with a municipal, state, or federal vehicle would not be considered as "taken" for public use. The owner might be entitled to recover his damages in a tort action, but not in eminent domain on the theory of a constitutional taking for public use.

It is not presently necessary nor desirable to try to locate precisely the line between situations on the one hand where damage to property constitutes a taking for public use for which the constitution requires just compensation to be paid, and those other situations in which mere damage to property by a governmental agency, even though approaching destruction, is not a taking in the constitutional sense. Suffice it to say that in our opinion the present case falls well on that side of the line, whatever its exact location, on which liability is not imposed by the constitutional provision.

In reaching this conclusion we give weight to the facts, which we may assume to exist, that the tower had no utility, direct or indirect, to the highway project, that the county did not need or desire the tower or the land on which it rested and did not intend to acquire or affect either the tower or the land, that the public obtained no benefit from injuring it, that the county had no reason to anticipate that damage would result from its acts, and that the injury to the tower was purely accidental. Whatever might be the significance of any of these facts standing alone, collectively they negative a taking in the constitutional sense. We think that for presently pertinent purposes, the case is substantially the same as if one of defendant's trucks hauling the sand and gravel had accidentally collided with and demolished one of the plaintiff's automobiles on the highway. In both cases there is damage, for which the county may or may not be liable in tort, depending on such factors as negligence and sovereign immunity; but plaintiff's property is not taken for public use within the meaning of sec. 13, art. I, Wis. Const.

(2) *Trespass.* If plaintiff's tower be considered as personal property, the complaint fails to allege an actionable trespass because it does not aver an intent on the part of the defendant or its servants to interfere with the tower. An intentional interference with the possession or physical condition of a chattel in the possession of another, without justification, is a trespass. Intention to intermeddle with the chattel is an essential element of the trespass. Prosser, Law of Torts (2d ed.), pp. 64–66, sec. 14; 1 Harper and James, Law of Torts, pp. 109, 110, sec. 2.5; Restatement, 1 Torts, p. 557, sec. 218, comment *b*. The intent required for trespass is not merely an intention to do the act which brings about the injury, but rather an intent to act with reference to the chattel.

"Such an intention is present when an act is done for the purpose of using or otherwise intermeddling with a chattel or with knowledge that such an intermeddling will, to a substantial certainty, result from the act." Restatement, 1 Torts, p. 556, sec. 218, comment *a;* Restatement, 4 Torts, p. 238, sec. 825; 1 Harper and James, *op. cit.,* p. 109, sec. 2.5.

In the present case, defendant's servants undoubtedly intended to deposit the road materials on the site of the roadbed; but it is not alleged, and we certainly cannot presume, that they intended to interfere with plaintiff's tower or to set in motion a force which would do so. In the absence of some allegation to that effect, we cannot infer that they should have anticipated that the dumping of sand and gravel would, through the peculiar workings of the subsurface swamp soil, exert irresistible pressure against the tower foundation. There was no element of common knowledge that the result would follow the action, such as is present where an embankment is built so close to plaintiff's land, and so steep and high, that the forces of gravity or of rainfall are quite certain to cause the earth to slide or be washed over plaintiff's land. See Restatement, 1 Torts, p. 362, sec. 158, comment *h*. In

essence the case is the same as if one of defendant's gravel trucks had accidentally collided with an automobile of the plaintiff, or with one of plaintiff's poles or towers. There would be no actionable trespass; liability, if any, would depend on negligence.

The result would be the same in the instant case if we were to consider that defendant's act brought about an invasion of real estate in which plaintiff owned an interest. The courts are moving away from the imposition of liability in trespass for invasions of property which are neither intended nor negligent, except where defendant's activity is extrahazardous in nature. Prosser, *op. cit.,* p. 55, sec. 13; 1 Harper and James, *op. cit.,* pp. 11, 12, sec. 1.4.

"Generally speaking, therefore, when there is an act of volition which results in a physical intrusion of another's land there is no liability in the absence of an intention to bring about the intrusion or negligence in the doing of the act." 1 Harper and James, *op. cit.,* p. 15, sec. 1.4.

The Restatement states the applicable principle and an illustration as follows:

"Except where the actor is engaged in an extrahazardous activity, an unintentional and nonnegligent entry on land in the possession of another or causing a thing or third person to enter the land, does not subject the actor to liability to the possessor, even though the entry causes harm to the possessor or to a thing or third person in whose security the possessor has a legally protected interest. . . .

"3. A piles logs on his land by the side of a stream well above high-water mark. An unprecedented freshet carries away the logs and deposits them on B's land downstream, causing harm to the land. A is not liable to B." Restatement, 1 Torts, pp. 394, 396, sec. 166, and comment *b,* illustration 3.

This court has recognized that in general trespass falls within the class of intentional harms, and "Where there is

no intentional, no voluntary act, there is no tort, no trespass."
(*Feiges v. Racine Dry Goods Co.* 231 Wis. 270, 275, 285
N. W. 799).[2]

(3) *Nuisance.*[3] "Nuisance" is a slippery term, which has
been used with widely different and sometimes inconsistent
meanings. See comment in *Schiro v. Oriental Realty Co.*
272 Wis. 537, 545, 76 N. W. (2d) 355, and in Prosser,
Law of Torts (2d ed.), p. 389 ff., sec. 70, 405 ff., sec. 72.
The term often begs the question. Thus we are apt to say
defendant has created a nuisance where the circumstances are
such that it is concluded that he should respond in damages
to one injured by his conduct; and it is often futile to try
to ascertain whether or not an activity or condition is a
nuisance except by first determining whether or not there
should be liability for it. The cases are very numerous, and
it is not presently necessary, nor would it be profitable, to
try to analyze or harmonize them.

The term "nuisance" is normally used to characterize a
continuing activity or condition which either gives rise to a
hazard or injury for which the one maintaining it should be
liable, as for example in *Robb v. Milwaukee,* and *Holl v.
Merrill,* discussed, *infra,* or by reason of noise, odors, dis-
orderly conduct, or other attribute, interferes with the use
and enjoyment of neighboring property so unreasonably that
liability results. Generally speaking, the liability attaches
only if the defendant's conduct is unreasonable in the cir-
cumstances, or negligent, reckless, or ultrahazardous. Prosser,
Law of Torts (2d ed.), p. 398, sec. 70; Restatement,
4 Torts, p. 231, sec. 822. There are doubtless nuisances that

---

[2] Occasional statements in the cases that intent is not an essential
element of trespass relate to the principle that if defendant invaded
plaintiff's land, it is immaterial that he believed he had a right to do
so, as where he mistakenly thought it was his own land.

[3] The discussion herein refers only to private, as contrasted with
public, nuisances.

do not fall into these common patterns, but we do not consider that the present case presents a nuisance of any kind.

We cannot subscribe to the argument that defendant committed a nuisance, actionable by plaintiff, by its perfectly normal and innocent act of depositing road ballast on the location of its proposed highway. The act certainly had none of the normal or commonly understood attributes of a nuisance. The construction of the road was a useful and desirable project. It was carried out in a normal and customary manner, and so far as appears defendant's servants acted reasonably in every respect. It is not contended that defendant had any reason to anticipate that damage to near-by property would be likely to result from the action. The project was not so inherently and exceptionally hazardous that it fell within the narrow class of cases in which absolute liability has been predicated. We see no policy consideration requiring that the burden of the loss be shifted to the county. In our opinion the correct rule for such cases is stated in the Restatement of the Law of Torts, as follows:

"The actor is liable in an action for damages for a nontrespassory invasion of another's interest in the private use and enjoyment of land if, (a) the other has property rights and privileges in respect to the use or enjoyment interfered with; and (b) the invasion is substantial; and (c) the actor's conduct is a legal cause of the invasion; and (d) the *invasion is either* (i) *intentional and unreasonable;* or (ii) *unintentional and otherwise actionable* under the rules governing liability for negligent, reckless, or ultrahazardous conduct." Restatement, 4 Torts, p. 226, sec. 822.

The invasion of plaintiff's interest in the instant case was not intentional, and the complaint does not allege any basis on which it could be held otherwise actionable under the rules governing liability for negligent, reckless, or ultrahazardous conduct. Instead of a nuisance, we have here at most a tort

more comparable to that which would have arisen had one of the defendant's trucks collided with a vehicle or tower of plaintiff.

We find nothing requiring a contrary conclusion in *Robb v. Milwaukee,* 241 Wis. 432, 6 N. W. (2d) 222, or *Holl v. Merrill,* 251 Wis. 203, 28 N. W. (2d) 363, and similar cases cited by plaintiff.

In *Robb v. Milwaukee,* the city operated a baseball field, from which balls were frequently batted over the fence into the street. One day a ball struck and injured the plaintiff as she was walking on the street. She was allowed to recover from the city on the ground that the operation of the ball park with insufficient protection for the escape of batted balls constituted a nuisance, from liability for which the city was not protected by the doctrine of sovereign immunity. Three members of the court dissented. The case is distinguished from the present one by the fact that the baseball park had been operated for a long period of time, during which it was known that balls were frequently batted over the fence into the street, thus creating a continuing and obvious hazard on the public street falling within the ordinary and usual conception of a nuisance.

In the *Holl Case, supra,* defendant county excavated under a public sidewalk of the defendant city in such a way that one of the sidewalk blocks tilted downward so as to form a hole about five inches deep, on which the plaintiff tripped and fell. Negligence on the county's part was alleged. The condition was apparently a continuing one which created a constant hazard to persons using the sidewalk. In reversing a summary judgment dismissing the complaint as against the county, this court held that the county's active interference with the sidewalk constituted a nuisance. Being founded on the negligent creation of a continuing hazard on a public street, the case is readily distinguishable from the one now before us.

(4) Since the reasons already stated lead to the conclusion that the complaint fails to state a cause of action, we need not consider the further question whether plaintiff could recover on a showing that defendant knew or should have known that the deposit of road ballast would jeopardize plaintiff's tower. Plaintiff having seen fit to place its tower on an abnormally unstable base, without acquiring rights in surrounding land, might perhaps be thought to have assumed the risk of damage resulting from use of such near-by land by reason of the instability of the subsoil, since the imposition of liability on defendant would in effect place a servitude on the surrounding land in plaintiff's favor without compensation to the landowner. Cf., *Pennsylvania Coal Co. v. Mahon,* 260 U. S. 393, 415, 43 Sup. Ct. 158, 67 L. Ed. 322.

*By the Court.*—The order is modified to provide that plaintiff may amend its complaint within twenty days from receipt of the record by the circuit court on remittitur, and, as so modified, is affirmed.