# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2017AP1593 |
| COMPLETE TITLE: | Alan W. Pinter,<br>            Plaintiff-Appellant-Petitioner,<br>      v.<br>Village of Stetsonville,<br>            Defendant-Respondent. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 382 Wis. 2d 272,915 N.W.2d 730
(2018 – unpublished)

| | |
|---|---|
| OPINION FILED: | June 20, 2019 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | February 11, 2019 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Taylor |
| JUDGE: | Ann Knox-Bauer |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | DALLET, J. dissents, joined by R.G. BRADLEY, J. and KELLY, J. (opinion filed). |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the plaintiff-appellant-petitioner, there were briefs filed by *William A. Grunewald*, *Adam V. Marshall*, and *Jensen, Scott, Grunewald & Shiffler, S.C.*, Medford. There was an oral argument by *William A. Grunewald* and *Adam V. Marshall*.

For he defendant-respondent, there was a brief filed by *Fred L. Morris*, *Ryan J. Steffes*, and *Weld Riley, S.C.*, Eau Claire. There was an oral argument by *Ryan Steffes*.

An amicus curiae brief was filed on behalf of League of Wisconsin Municipalities by *Claire Silverman*, *Maria Davis*, and *League of Wisconsin Municipalities.*

2019 WI 74

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2017AP1593
(L.C. No. 2015CV44)

STATE OF WISCONSIN                    :             IN SUPREME COURT

**Alan W. Pinter,**

   **Plaintiff-Appellant-Petitioner,**

   **v.**

**Village of Stetsonville,**

   **Defendant-Respondent.**

**FILED**

**JUN 20, 2019**

Sheila T. Reiff
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1   ANN WALSH BRADLEY, J.   The petitioner, Alan Pinter, seeks review of an unpublished court of appeals decision affirming the circuit court's grant of summary judgment dismissing his claims against the Village of Stetsonville for negligence and private nuisance.[1]  Pinter sued the Village after wastewater backed up into his basement.

---

[1] Pinter v. Vill. of Stetsonville, No. 2017AP1593, unpublished slip op. (Wis. Ct. App. Apr. 10, 2018) (affirming judgment of circuit court for Taylor County, Ann Knox-Bauer, Judge).

¶2    He asserts that the court of appeals erred in determining that the Village is immune from suit for negligence pursuant to Wis. Stat. § 893.80(4) (2015-16).[2]    Further, he contends that the court of appeals erred in affirming the grant of summary judgment on his private nuisance claim on the grounds that he did not present expert testimony with regard to causation.

¶3    Specifically, Pinter argues that the Village's oral policy to pump water out of a lift station when it reached a certain level created a ministerial duty to act.    He further contends that expert testimony is not required to establish the requisite causation to maintain his private nuisance claim.

¶4    We conclude that the oral policy in question here does not rise to the level of a ministerial duty.    The proffered "rule of thumb" is not "absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode, and occasion for its performance with such certainty that nothing remains for judgment or discretion."    See Lister v. Bd. of Regents of Univ. of Wis. Sys., 72 Wis. 2d 282, 301, 240 N.W.2d 610 (1976). Because such a task is discretionary, the Village is immune from suit for negligence.

¶5    Further, we conclude that the circuit court properly granted summary judgment to the Village on Pinter's private

---

[2] All subsequent references to the Wisconsin Statutes are to the 2015-16 version unless otherwise indicated.

2

nuisance claim. Pursuant to the facts of this case, expert testimony was required to raise a genuine issue of material fact as to causation.

¶6 Accordingly, we affirm the decision of the court of appeals.

I

¶7 The Village of Stetsonville owns and operates a wastewater disposal system that serves approximately 500 people. The system is primarily gravity fed, but wastewater is pumped at two lift stations——the north lift station and the main lift station.

¶8 There is a separate storm sewer system in the Village for the collection of storm water. Although the wastewater system is designed to be closed and separate from the storm water system, Village employees testified that there may be storm water infiltration into the wastewater disposal system because of cracks in the pipes and because drain tile and sump pumps from older homes in the Village may improperly drain into the wastewater disposal system.

¶9 The main wastewater lift station contains a concrete pit approximately 20 feet deep. On one side wall of the pit are 12 ladder-like rungs that extend down the length of the pit, which an employee can use to climb inside the lift station for cleaning and maintenance.

¶10 When the wastewater reaches a certain level in the pit, a pump lifts the wastewater through a pipe up to a point where it can then flow downhill to the water treatment facility.

If the wastewater reaches another higher level, an alarm is triggered.

¶11 The Wisconsin Department of Natural Resources (DNR) generally prohibits pumping untreated wastewater into a public waterway.[3] However, a municipality can legally justify bypassing the water treatment facility if it can demonstrate that: (1) the bypass was unavoidable to prevent loss of life, personal injury, or severe property damage; (2) there were no feasible alternatives to the bypass; and (3) the bypass was reported to the DNR by the municipality.[4]

¶12 Testimony in this case indicated that, in addition to allowing employees access to the bottom of the pit, the ladder-like rungs on the side of the pit served an additional purpose, although there was some discrepancy regarding the specifics of that purpose. Namely, Village employees used the height of the rungs as a guide for determining when to bypass the wastewater disposal system and pump wastewater directly into a nearby ditch so as to avoid the backup of wastewater into the basements of nearby homes.

¶13 There are some discrepancies in the record regarding how the rungs were used to determine the appropriateness of bypassing the water treatment facility. For example, according to the deposition testimony of David Duellman, the Director of

---

[3] See Wis. Admin. Code § NR 205.07(1)(u).

[4] See § NR 205.07(1)(u)3.

4

Public Works for the Village, the "rule of thumb" was that when the wastewater reached the fourth rung from the top of the pit in the main lift station, the bypass pump would be set in place. If the water level continued to rise, or if it continued to rain, an employee would start the pump, bypassing the treatment facility and instead pumping the untreated wastewater directly into a ditch.

¶14 Another Village employee, Chad Smith, testified differently. Specifically, Smith testified in his deposition that "at the sixth rung we should be setting in place the portable pump. If it gets to the fourth rung, we bypass."

¶15 The "rule of thumb" focusing on the fourth rung was created by Mike Danen, a former director of public works for the Village. It was not written down,[5] nor was it ever formally enacted by the Village Board.[6] Instead, it was communicated orally among Village employees. Danen passed the "rule of thumb" on to Duellman, and Duellman passed it on to Smith.

---

[5] There is no operator's manual for the Village's wastewater disposal system.

[6] However, Village President Gregory Brunner testified that he was aware of the "rule of thumb."

¶16 Alan Pinter lives near the main lift station. During the past two decades, Pinter's home has experienced wastewater backups on multiple occasions.[7]

¶17 On September 10, 2014, during a heavy rainstorm, Smith received a high level alarm for both lift stations. Because Smith received the alarm for the north lift station first, he called Black River Transport, a septic hauling company, to transport wastewater from the north lift station to the water treatment facility.

¶18 Meanwhile, Pinter told Duellman, who was stationed at the main lift station, that the floor drain in his basement was "gargling." Accordingly, he urged Duellman to use the portable bypass pump. However, Duellman told Pinter that he wanted to wait for Black River Transport to arrive at the main lift station so that he could avoid pumping the untreated wastewater directly into the ditch.[8] Pinter offered to help set up the bypass pump, but when Duellman declined the offer, Pinter left for work.

---

[7] Pinter testified that wastewater backed up into his home twice between the time he purchased his home in 2011 and September 10, 2014. Jack Poirier, the previous homeowner, testified that he experienced wastewater backups in his basement between 1998 and 2011. According to Poirier, the Village paid him for the damage to his property and assured him that new procedures would be put into place to prevent the backup from reoccurring.

[8] Based on the record, it appears that Duellman was trying to avoid the paperwork associated with reporting bypass events to the DNR as required by Wis. Admin. Code § NR 205.07(1)(u)3.

¶19 Within minutes of arriving at work, Pinter's wife called and told him that wastewater was backing up into their basement. Pinter returned to the main lift station and told Duellman about the flooding. Duellman called Smith and asked him to have Black River Transport come to the main lift station and begin pumping. Duellman told Smith that the wastewater had reached the second rung from the top, the highest Duellman had ever seen it.

¶20 The truck from Black River Transport left the north lift station and went to the water treatment facility. After emptying its load there, the truck arrived at the main lift station and began pumping. Once the truck became full, it went to the water treatment facility to again empty its load. Before the truck made it to the treatment facility, however, the main lift station had taken on a significant amount of water. Pinter yelled from his house that wastewater was still overflowing into his basement.

¶21 At this point, Smith decided to use the portable bypass pump, but wastewater continued to flow into Pinter's basement. The wastewater eventually receded, leaving a black and grey residue.

¶22 Pinter brought suit against the Village, alleging causes of action for negligence and private nuisance. Moving for summary judgment, the Village asserted that it was entitled to governmental immunity pursuant to Wis. Stat. § 893.80(4).[9] It

---

[9] Wis. Stat. § 893.80(4) provides:

(continued)

7

further asserted that Pinter failed to demonstrate that any failure to repair the piping in the system was a legal cause of the sewage backup, and that expert testimony would be necessary to establish causation.

¶23 The circuit court granted summary judgment to the Village. It determined first that no exception to governmental immunity applied. Specifically, it stated that "[t]here is no case law to support the plaintiff's assertion that the Village's 'rule of thumb' created a ministerial duty such that there was no room for exercise of discretion by the employees." As a result, the circuit court dismissed Pinter's negligence cause of action.

¶24 Further, the circuit court determined that "[t]he allegations that the Village failed to maintain the sewer system and thus caused the sewage back up into plaintiff's home are not supported by any evidence." The reason for this determination was that "[t]he statements made by Village employees are their personal assumptions as to the cause or suspected cause of the problem, but this is not sufficient proof or explanation as to

No suit may be brought against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or any agency thereof for the intentional torts of its officers, officials, agents or employees nor may any suit be brought against such corporation, subdivision or agency or volunteer fire company or against its officers, officials, agents or employees for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions.

8

link the Village's alleged lack of maintenance to the back up of sewage in plaintiff's home." Accordingly, the circuit court also dismissed Pinter's cause of action for private nuisance.

¶25 The court of appeals affirmed the circuit court, concluding that the Village was entitled to governmental immunity under Wis. Stat. § 893.80(4) because the Village's fourth rung "rule of thumb" did not create a ministerial duty. Pinter v. Vill. of Stetsonville, No. 2017AP1593, unpublished slip op., ¶25 (Wis. Ct. App. Apr. 10, 2018). It further determined that the known and compelling danger exception to governmental immunity does not apply because the Village took one or more precautionary measures to respond to the alleged danger. Id., ¶29. As to the private nuisance claim, the court of appeals reasoned that because Pinter did not present expert testimony, he failed to raise a genuine issue of material fact that the negligent failure to maintain the wastewater disposal system was the legal cause of his damages. Id., ¶¶45-46.

II

¶26 We are called upon to review the court of appeals' determination that the circuit court properly granted summary judgment to the Village. We review a grant of summary judgment independently, applying the same methodology as the circuit court. Shugarts v. Mohr, 2018 WI 27, ¶17, 380 Wis. 2d 512, 909 N.W.2d 402. Summary judgment is appropriate where there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Id.

9

¶27 In our review, we examine whether the ministerial duty exception to governmental immunity applies. Whether an exception to immunity applies to undisputed facts presents a question of law. Pries v. McMillon, 2010 WI 63, ¶19, 326 Wis. 2d 37, 784 N.W.2d 648 (citation omitted).

¶28 Our review also requires us to interpret Wis. Stat. § 893.80(4). Statutory interpretation is likewise a question of law. This court reviews questions of law independently of the determinations rendered by the circuit court and court of appeals. Horizon Bank, Nat'l Ass'n v. Marshalls Point Retreat LLC, 2018 WI 19, ¶28, 380 Wis. 2d 60, 908 N.W.2d 797 (citation omitted).

III

¶29 We begin by setting forth the statutory text and legal principles of governmental immunity that drive our analysis. Subsequently, we apply those principles to the negligence cause of action asserted in this case. Finally, we address the necessity of expert testimony to establish that infiltration of water from outside sources caused the backup in Pinter's basement.

A

¶30 Wisconsin Stat. § 893.80(4), the governmental immunity statute, provides:

> No suit may be brought against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or any agency thereof for the intentional torts of its officers, officials, agents or employees nor may any suit be brought against such corporation, subdivision or

agency or volunteer fire company or against its officers, officials, agents or employees for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions.

¶31 This court has consistently interpreted "acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions" to include any acts that involve the exercise of discretion. See, e.g., Lifer v. Raymond, 80 Wis. 2d 503, 511-12, 259 N.W.2d 537 (1977). However, "[t]he rule of immunity is subject to exceptions, which seek to balance the rights of injured parties to seek compensation with the need for public officers and employees to perform their duties freely." Pries, 326 Wis. 2d 37, ¶21 (citation omitted).

¶32 Indeed, case law has identified four situations in which there is no immunity against liability: (1) the performance of ministerial duties imposed by law; (2) known and compelling dangers that give rise to ministerial duties on the part of public officers or employees; (3) acts involving medical discretion; and (4) acts that are malicious, willful, and

11

intentional.[10] Willow Creek Ranch, L.L.C. v. Town of Shelby, 2000 WI 56, ¶26, 235 Wis. 2d 409, 611 N.W.2d 693.

¶33 The doctrine of governmental immunity "is founded upon policy considerations that strike a balance between 'the need of public officers to perform their functions freely [and] the right of an aggrieved party to seek redress.'" Kierstyn v. Racine Unified Sch. Dist., 228 Wis. 2d 81, ¶14, 596 N.W.2d 417 (1999) (quoting Lister, 72 Wis. 2d at 300). "Those policy considerations focus largely on the protection of the public purse against legal action and on the restraint of public officials through political rather than judicial means." Id. Such concerns include:

> (1) The danger of influencing public officers in the performance of their functions by the threat of [a] lawsuit; (2) the deterrent effect which the threat of personal liability might have on those who are considering entering public service; (3) the drain on valuable time caused by such actions; (4) the unfairness of subjecting officials to personal liability for the acts of their subordinates; and (5)

---

[10] Although some case law indicates that ministerial duty and known danger are separate exceptions to governmental immunity, we have also described the known danger exception as "a narrow judicially-created exception that arises only when there exists a danger that is known and compelling enough to give rise to a ministerial duty on the part of a municipality or its officers." Lodl v. Progressive N. Ins. Co., 2002 WI 71, ¶4, 253 Wis. 2d 323, 646 N.W.2d 314 (emphasis added). Subsequent case law has explained that "[t]he two exceptions overlap to an extent, inasmuch as they both require the identification of a ministerial duty." Pries v. McMillon, 2010 WI 63, ¶24, 326 Wis. 2d 37, 784 N.W.2d 648. In this case, we need not address the doctrinal question of whether the known danger exception is collapsed into the ministerial duty exception.

the feeling that the ballot and removal procedures are more appropriate methods of dealing with misconduct in public office.

Lister, 72 Wis. 2d at 299.

¶34 It is through the lens of this precedent and framework that we address the issues presented in this case. Instead of following our established case law, the dissent latches onto an interpretation of Wis. Stat. § 893.80(4) that would create a sea change in the law of governmental immunity. See dissent, ¶¶76-77. The reasons for rejecting such a dramatic reworking of this area of the law were aptly explained by our opinion mere months ago in Engelhardt v. City of New Berlin, 2019 WI 2, ¶¶21-28, 385 Wis. 2d 86, 921 N.W.2d 714.

¶35 In Engelhardt, a majority of this court rejected the same invitation the dissent here accepts. We wrote:

Decades of jurisprudence cannot, and should not, be discarded casually. This court follows the doctrine of stare decisis scrupulously because of our abiding respect for the rule of law. The doctrine of stare decisis is vital to the evenhanded, predictable, and consistent development of legal principles. It fosters reliance on judicial decisions and contributes to the actual and perceived integrity of the judicial process.

Id., ¶24 (internal quotations and citations omitted).

¶36 Further, we observed that the doctrine of stare decisis is of particular importance where a court has authoritatively interpreted a statute. Id., ¶25 (citation omitted). This is because the legislature is free to change a statute if it believes that we have interpreted the statute

13

incorrectly. Id. Yet, with regard to Wis. Stat. § 893.80, it has not done so.

¶37 The practical concerns with the dissent's interpretation of Wis. Stat. § 893.80 that we identified in Engelhardt remain true. Adopting the dissent's reasoning "would effectively pull the rug out from under municipalities and other governmental entities that have managed their affairs relying upon our decades-old interpretation of the governmental immunity statute." Id., ¶27. The dissent's approach is "especially jarring to the public and legal community" given that we have rejected its reasoning twice in recent memory——not only in Engelhardt, but also two years prior in Melchert v. Pro Elec. Contractors, 2017 WI 30, ¶¶53-65, 374 Wis. 2d 439, 892 N.W.2d 710. Engelhardt, 385 Wis. 2d 86, ¶27.

¶38 In Engelhardt, we concluded our analysis of this issue as follows:

> It is unwise for a court to frequently call into question existing and long-standing law. Doing so gives the impression that the decision to overturn prior cases is undertaken merely because the composition of the court has changed. When existing law is open to revision in every case, deciding cases becomes a mere exercise of judicial will, with arbitrary and unpredictable results.

Id., ¶28 (quotations and citations omitted). Accordingly, we apply this court's longstanding governmental immunity jurisprudence in this case.

14

B

¶39 We turn next to the ministerial duty exception and its applicability to the negligence cause of action Pinter asserts.

¶40 Pursuant to this court's well-established jurisprudence on governmental immunity, there is no immunity from liability associated with the performance of ministerial duties imposed by law. Pries, 326 Wis. 2d 37, ¶22 (citation omitted). We have long recognized a distinction between discretionary duties and ministerial duties. Id. (citations omitted) The performer of a discretionary duty is shielded while the performer of a ministerial duty is exposed to liability. Kierstyn, 228 Wis. 2d 81, ¶17.

¶41 A duty is ministerial if it is "absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion." Pries, 326 Wis. 2d 37, ¶22 (quoting Lister, 72 Wis. 2d at 301). "Stated differently, 'a duty is regarded as ministerial when it has been positively imposed by law, and its performance required at a time and in a manner, or upon conditions which are specifically designated, the duty to perform under the conditions specified not being dependent upon the officer's judgment or discretion.'" Id. (citation omitted). In contrast, a discretionary act "involves the exercise of judgment in the application of a rule to specific facts." Willow Creek Ranch, 235 Wis. 2d 409, ¶25 (citation omitted).

15

¶42   Pinter contends that the "rule of thumb" to pump when water reached the fourth rung created a ministerial duty. Specifically, he argues that such an oral policy was clear and definite so as to bind Village employees to act in a certain way when water reached the fourth rung.  In contrast, the Village contends that the "rule of thumb" requires the exercise of discretion in determining whether it is appropriate to pump wastewater directly into the ditch.

¶43   We agree with the Village.  Specifically, the Village employees did not have a ministerial duty to pump water directly into the ditch when the water reached the fourth rung. Testimony indicated that the "rule of thumb" to bypass when wastewater reached the fourth rung had mixed interpretations. Additionally, it was just that——a "rule of thumb."

¶44   The "rule of thumb" was shared orally, but was not written down, let alone passed by any lawmaking body.  Although there could be an oral policy that gives rise to a ministerial duty, the oral policy at issue here does not.

¶45   For a duty to be ministerial, "a public officer must be not only bound to act, but also bound by law to act in a very particular way . . . ."  Yao v. Chapman, 2005 WI App 200, ¶29, 287 Wis. 2d 445, 705 N.W.2d 272.  At best, the "rule of thumb" here created a signal to "do something" when wastewater reached the fourth rung.  What that "something" is constitutes a matter of discretion.

¶46   The discretionary nature of the "rule of thumb" is underscored by the various considerations that go into the

decision to bypass.   As the Village's counsel highlighted at oral argument, the decision to bypass involves the consideration of a number of variables, including whether the water level is rising, whether it is still raining, and the viability of using a pump truck.

¶47  Further, our analysis is informed by DNR wastewater treatment regulations.  Generally, the DNR prohibits any bypass, which is defined as "the intentional diversion of waste streams from any portion of a sewage treatment facility or a wastewater treatment facility."   Wis. Admin. Code §§ NR 205.03(5), 205.07(1)(u).

¶48  An unscheduled bypass is only permissible if three conditions are met.   Wis. Admin. Code § NR 205.07(1)(u)3. First, the bypass must have been "unavoidable to prevent loss of life, personal injury, or severe property damage."   § NR 205.07(1)(u)3.a.    Second, there must be "no feasible alternatives to the bypass . . . ."   § NR 205.07(1)(u)3.b. Finally, the bypass must be reported in accordance with DNR regulations.  § NR 205.07(1)(u)3.c.

¶49  The first two of these requirements emphasize the discretionary nature of the decision to bypass.  Specifically, one must exercise discretion in determining if a bypass is "unavoidable to prevent loss of life, personal injury, or severe property damage."  See Wis. Admin. Code § NR 205.07(1)(u)3.a. Second, one cannot determine if there are feasible alternatives without exercising discretion.  Indeed, the use of the word "feasible" necessarily implies a certain amount of discretion.

17

¶50 Before the court of appeals, Pinter also argued that the known and compelling danger exception to governmental immunity was applicable to allow his negligence cause of action to proceed. See Heuser ex rel. Jacobs v. Cmty. Ins. Corp., 2009 WI App 151, ¶¶28-29, 321 Wis. 2d 729, 774 N.W.2d 653; Cords v. Anderson, 80 Wis. 2d 525, 541-42, 259 N.W.2d 672 (1977). Specifically, he argued that human waste entering his basement created a compelling danger.

¶51 The court of appeals declined to apply the known and compelling danger exception because Pinter failed to demonstrate a necessary element given that the Village took precautionary measures in response to the alleged danger.[11] Pinter, No. 2017AP1593, unpublished slip op., ¶¶29, 31. Pinter did not contest the court of appeals' determination that the known and compelling danger exception does not apply in this court, and we do not address the issue further.

¶52 In sum, the decision regarding whether to bypass was rife with discretion. The factors that must be considered before bypass is accomplished, especially in light of the DNR

---

[11] In order for the known and compelling danger exception to apply, a three-step test must be fulfilled. First, something must happen to create a compelling danger. Heuser ex rel. Jacobs v. Cmty. Ins. Corp., 2009 WI App 151, ¶28, 321 Wis. 2d 729, 774 N.W.2d 653. Second, a governmental actor must find out about the danger, making it a known and compelling danger. Id. Third, the governmental actor either addresses the danger and takes one or more precautionary measures, or the actor does nothing and allows the danger to continue. Id. Doing nothing results in a loss of immunity. Id., ¶34.

18

regulations on the subject, offer a quintessential example of a discretionary task and the antithesis of a ministerial one. Accordingly, we determine that the Village is immune from suit for negligence.

IV

¶53 Finally, we turn to address the necessity of expert testimony to establish that infiltration of water from outside sources caused the backup in Pinter's basement.

¶54 Pinter brought two causes of action in his amended complaint: negligence and private nuisance. Pursuant to this court's decision in Milwaukee Metro. Sewerage Dist. v. City of Milwaukee, "a municipality may be immune from nuisance suits depending on the nature of the tortious acts giving rise to the nuisance." 2005 WI 8, ¶8, 277 Wis. 2d 635, 691 N.W.2d 658. It is "immune from suit for nuisance if the nuisance is predicated on negligent acts that are discretionary in nature. A municipality does not enjoy immunity from suit for nuisance when the underlying tortious conduct is negligence and the negligence is comprised of acts performed pursuant to a ministerial duty." Id. In other words, "[w]hether immunity exists for nuisance founded on negligence depends upon the character of the negligent acts." Id., ¶59.

¶55 Pinter's complaint alleges negligent acts of two distinct characters. First, he alleges that the Village was negligent in failing to pump wastewater directly to the ditch. As analyzed above, this is a discretionary decision for which the Village is immune. Accordingly, it is also immune from a

19

private nuisance cause of action with the underlying negligent act being the failure to pump.  See id., ¶8.

¶56 Second, Pinter alleges that the Village negligently maintained its sewer system.  Specifically, Pinter alleges that the Village negligently allowed storm water to infiltrate the wastewater disposal system, causing the backup in his basement.

¶57 The Village conceded that it is not entitled to immunity from a claim that it negligently maintained its wastewater disposal system, causing a private nuisance.  Because the issue was conceded, it was not briefed or argued.

¶58 We observe some dissonance in this concession.  As set forth above, Pinter has not contested the court of appeals' determination that the known and compelling danger exception does not allow his negligence claim to proceed.  See supra, ¶51.  The character of the acts underlying Pinter's private nuisance cause of action is the same as that underlying the negligence cause of action.  Indeed, the amended complaint bases the private nuisance cause of action on the allegations "set forth above" with regard to the negligence cause of action.  There is thus some incongruity in concluding that the Village is immune from suit for negligence but not immune from suit for private nuisance based on negligence, when the character of the acts on which the claims are premised is the same.

¶59 Nevertheless, we need not address this unbriefed issue because, assuming without deciding that the private nuisance action can be maintained, Pinter has not raised a genuine issue of material fact as to causation.  We reach this conclusion

20

because he failed to present expert testimony on an issue that is beyond common knowledge and lay comprehension.

¶60 The Village contends that Pinter has not raised a genuine issue of material fact because he did not present expert testimony on the issue of whether the infiltration of storm water was a legal cause of the backup in Pinter's basement. In response, Pinter contends that no such expert testimony is necessary.

¶61 A plaintiff claiming private nuisance must demonstrate that the "actor's conduct is [a] legal cause of the invasion." Wis. Power & Light Co. v. Columbia Cty., 3 Wis. 2d 1, 11, 87 N.W.2d 279 (1958) (citation omitted). This requires a showing that (1) the invasion is intentional and unreasonable or (2) the invasion is unintentional and otherwise actionable under the rules governing liability for negligent, reckless, or ultra-hazardous conduct. Id. Pinter here proceeds under a theory of negligence.

¶62 "A showing of negligence requires proof of causation." Menick v. City of Menasha, 200 Wis. 2d 737, 747, 547 N.W.2d 778 (Ct. App. 1996) (citation omitted). "The party with the burden of proof on an element must establish that there is a genuine issue of fact by submitting evidence setting forth specific facts material to that element." Id. (citations omitted).

¶63 Before expert testimony is held to be required to prove causation, it must be determined that "the matter is not within the realm of ordinary experience and lay comprehension." White v. Leeder, 149 Wis. 2d 948, 960, 440 N.W.2d 557 (1989).

21

"Expert testimony is often required when unusually complex or esoteric issues are before the jury because it serves to assist the trier of fact." Racine Cty. v. Oracular Milwaukee, Inc., 2010 WI 25, ¶28, 323 Wis. 2d 682, 781 N.W.2d 88 (internal quotations and citations omitted). However, if the matter is one of common knowledge or within the realm of ordinary experience, expert testimony is not required. Id. (citations omitted).

¶64 Expert testimony in the specific context of a municipal sewer system was addressed by the court of appeals in Menick, 200 Wis. 2d 737. In Menick, the court of appeals determined that the municipality was not immune from suit for private nuisance based on negligent failure to maintain the system. Id. at 745-46. However, even though there existed a cause of action in private nuisance, "Menick's failure to offer an expert's opinion as to the legal cause of the flooding defeats her claim." Id. at 745. Specifically, the Menick court concluded:

> Menick has the burden of proving that the flooding was caused by the negligence of the City. Our review of the record shows that she has failed to provide any expert testimony or to advance any theory of liability supported by specific allegations of negligent actions on the part of the City.

Id. at 748.

¶65 Similarly here, Pinter has not presented expert testimony to demonstrate that the Village's failure to maintain the wastewater disposal system caused water from outside sources to infiltrate the system, thereby causing the backup in his

basement. Like the claim at issue in Menick, such a deficiency is fatal to Pinter's nuisance claim.

¶66 As we observed in City of Milwaukee, "a negligence-based nuisance requires proof of causation, which may require expert testimony if falling outside the realm of ordinary experience and comprehension." 277 Wis. 2d 635, ¶64. The nuances and complexities of storm water infiltration into the municipal sewer system at issue in this case are outside the realm of ordinary experience and lay comprehension.

¶67 As the court of appeals stated, "[d]etermining to what extent the backup was caused by infiltration, as opposed to Village employees' failure to bypass, does not fall within the realm of lay knowledge." Pinter, No. 2017AP1593, unpublished slip op., ¶45. Such a determination would require a jury to determine whether water infiltrated the system, if so how much water infiltrated the system, whether the amount was unreasonable, and whether the infiltration contributed to the backup. See id., ¶42. Because these matters are beyond ordinary experience and lay comprehension, expert testimony is required.

¶68 Absent expert testimony, Pinter has failed to raise a genuine issue of material fact as to whether infiltration by water outside the Village wastewater treatment system caused the wastewater backup in his basement. Pursuant to the facts of this case, expert testimony was required to raise a genuine issue of material fact as to causation.

23

¶69 In sum, we conclude that the oral policy in question here does not rise to the level of a ministerial duty. The proffered "rule of thumb" is not "absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode, and occasion for its performance with such certainty that nothing remains for judgment or discretion." Lister, 72 Wis. 2d at 301. Because such a task is discretionary, the Village is immune from suit for negligence.

¶70 Further, we conclude that the circuit court properly granted summary judgment to the Village on Pinter's private nuisance claim. Pursuant to the facts of this case, expert testimony was required to raise a genuine issue of material fact as to causation.

¶71 Accordingly, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶72 REBECCA FRANK DALLET, J. *(dissenting).* The majority opinion continues to apply a framework for governmental immunity that creates an artificial, impracticable distinction between a ministerial duty and discretionary act. I apply the plain language of Wis. Stat. § 893.80(4) to determine whether the Village of Stetsonville is entitled to governmental immunity on Alan Pinter's negligence claim. The majority opinion appears to adopt a requirement of expert testimony in every private nuisance claim arising out of negligent maintenance of a wastewater disposal system. I maintain that whether expert testimony is required is a fact-specific inquiry. Because I would reverse the court of appeals as to both of Pinter's claims and remand the cause to the circuit court for further proceedings, I respectfully dissent.

### A. The Village is not entitled to governmental immunity.

¶73 This court in 1962 determined that because the doctrine of municipal governmental immunity has judicial origins, this court can abrogate it. Holytz v. City of Milwaukee, 17 Wis. 2d 26, 39, 115 N.W.2d 618 (1962). So this court did just that. We declared that "henceforward, so far as governmental responsibility for torts is concerned, the rule is liability——the exception is immunity." Id. An exception was created for immunity from tort for a governmental body in the exercise of its "legislative or judicial or quasi-legislative or quasi-judicial functions." Id. at 40. The following year, the legislature codified this exception for governmental immunity by

1

enacting Wis. Stat. § 893.80(4), which provides, in pertinent part, that "[n]o suit may be brought against any . . . governmental subdivision or any agency thereof . . . or against its officers, officials, agents or employees for acts done in the exercise of legislative, quasi-legislative, judicial, or quasi-judicial functions."[1]

¶74 Soon after the adoption of Wis. Stat. § 893.80(4), this court began to enlarge the limited exception to governmental immunity with a return to the pre-Holytz judicial classification of whether the government employee's act was "discretionary" or whether he or she was performing a "ministerial duty."[2] Legislative, quasi-legislative, judicial or quasi-judicial functions in § 893.80(4) has thus been interpreted by this court to be synonymous with the word "discretionary." See Willow Creek Ranch, L.L.C. v. Town of Shelby, 2000 WI 56, ¶25, 235 Wis. 2d 409, 611 N.W.2d 693. Although every act has some measure of discretion attached, governmental immunity has been granted for acts this court has labeled as "discretionary," but this court has afforded no immunity for liability associated with what it deems "'the

---

[1] The statute was originally enacted as Wis. Stat. § 331.43.

[2] A ministerial duty has been defined as one that is "'absolute, certain and imperative . . . and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion.'" Lodl v. Progressive N. Ins. Co., 2002 WI 71, ¶25, 253 Wis. 2d 323, 646 Wis. 2d 314 (quoting Lister v. Board of Regents of Univ. of Wis. Sys., 72 Wis. 2d 282, 301, 240 N.W.2d 610 (1976)).

performance of ministerial duties imposed by law.'" See Legue v. City of Racine, 2014 WI 92, ¶42, 357 Wis. 2d 250, 849 N.W.2d 837 (quoting Brown v. Acuity, 2013 WI 60, ¶42, 348 Wis. 2d 603, 833 N.W.2d 96).

¶75 The determination that an act is discretionary so as to invoke immunity has appeared almost random at times.[3] The inconsistent jurisprudence resulting from our engagement in this fiction demonstrates how untethered this court has become from the intent of governmental immunity: "'to ensure that courts refuse to pass judgment on policy decisions in the province of coordinate branches of government, if such a policy decision, consciously balancing risks and advantages, took place.'" Legue, 357 Wis. 2d 250, ¶40 (emphasis added; quoted source omitted).

¶76 In accordance with this framework, Pinter asserts that the Village is not entitled to immunity because the protocol of when to use the portable pump to bypass the wastewater disposal

---

[3] See, e.g., Lodl, 253 Wis. 2d 323, ¶31 (holding that although the statute at issue described the procedures the officer should use in deciding to manually control traffic, the officer had discretion as to when to perform manual traffic control); Scott v. Savers Prop. & Cas. Ins. Co., 2003 WI 60, ¶29, 262 Wis. 2d 127, 663 N.W.2d 715 (holding that a guidance counselor's act of wrongly advising a student that his classes were approved by the NCAA was discretionary, despite the guidance counselor's receipt of clear and unambiguous forms detailing approved and unapproved NCAA courses); Brown v. Acuity, 2013 WI 60, ¶59, 348 Wis. 2d 603, 833 N.W.2d 96 (holding that a firefighter was liable for running through a red stop signal with his emergency lights activated, but without an audible signal, because he violated a clear ministerial duty).

3

system gave rise to a ministerial duty and left no room for the exercise of discretion. Rather than employ the judicial labels this court has layered over Wis. Stat. § 893.80(4), I would return to the plain text of § 893.80(4) and adhere to this court's stated purpose for the limited exception of governmental immunity. See Engelhardt v. City of New Berlin, 2019 WI 2, ¶75, 385 Wis. 2d 86, 921 N.W.2d 714 (Dallet, J., concurring) ("Returning to the text of § 893.80(4) would not only result in coherency in our jurisprudence, it would also allow redress to innocent victims for wrongs committed by the government."); see also Melchert v. Pro Electric Contractors, 2017 WI 30, ¶65, 374 Wis. 2d 439, 892 N.W.2d 710 (R.G. Bradley, J., dissenting) ("Restoring an interpretation of Wis. Stat. § 893.80(4) properly grounded in that section's text would bring coherence and predictability to our governmental immunity jurisprudence.").

¶77 Wisconsin Stat. § 893.80(4) provides that "[n]o suit may be brought against any . . . governmental subdivision or any agency thereof . . . or against its officers, officials, agents or employees for acts done in the exercise of legislative, quasi-legislative, judicial, or quasi-judicial functions." The common, ordinary, and accepted meaning of the words in § 893.80(4) afford governmental immunity only for agents or employees of a governmental entity who are engaged in an act

4

that, in some sense or degree, resembles making laws or exercising judgments related to government business.[4]

¶78 When Village employees reacted to the high wastewater levels at the main lift station on September 10, 2014, they were not making any laws or exercising any judgments related to government business pursuant to Wis. Stat. § 893.80(4). Moreover, they were not making balanced policy decisions for wastewater management on behalf of the Village for which the protection of immunity was intended. They therefore cannot be said to have acted in a quasi-legislative or quasi-judicial manner. Treating the Village employees' actions in response to an emergency as legislative, quasi-legislative, judicial, or quasi-judicial functions protected by immunity is a distortion of the clear statutory language of § 893.80(4) and the purpose of governmental immunity.

¶79 On the other hand, formal action by the Village Board to memorialize or adopt the protocol regarding the proper response to high wastewater levels could qualify as a quasi-legislative function of the Village. Had the Village's protocol been memorialized or adopted by the Village Board, followed by

___

[4] The word "legislative" means "[o]f, relating to, or involving lawmaking or the power to enact laws; concerned with making laws." Legislative, Black's Law Dictionary 1039 (10th ed. 2014). The word "judicial" means "[o]f, relating to, or involving a judgment." Judicial, Black's Law Dictionary 974. The word "quasi" means "[s]eemingly but not actually; in some sense or degree; resembling; nearly." Quasi, Black's Law Dictionary 1439. A "function" refers to an "[a]ctivity that is appropriate to a particular business or profession." Function, Black's Law Dictionary 787.

5

the Village employees on September 10, 2014, yet the backup still occurred, the Village would arguably have immunity against a claim for negligence because their employees acted in accordance with a policy adopted pursuant to a legislative or quasi-legislative function. However, in this case it is undisputed that the protocol was never mandated by the Village and, in any event, was not followed. The circuit court improperly granted summary judgment to the Village on the grounds that the Village was immune from suit under Wis. Stat. § 893.80(4). Since Pinter's negligence claim is not barred by the doctrine of governmental immunity, the cause should be remanded to the circuit court for further proceedings on this claim.[5]

B. The evidence in the record and inferences from that evidence were sufficient to create a genuine issue of material fact on Pinter's private nuisance claim without the need for expert testimony.

¶80 The majority concludes that Pinter did not raise a genuine issue of material fact as to his private nuisance claim because he did not present expert testimony. Majority op., ¶59. To the contrary, I conclude that the evidence in the record and inferences from that evidence were sufficient to create a genuine issue of material fact that the Village negligently

---

[5] I further conclude that the Village is not entitled to governmental immunity on Pinter's private nuisance claim, which the majority opinion assumes without deciding. See majority op., ¶59.

6

maintained the wastewater disposal system causing a private nuisance, and that expert testimony was not required.

¶81 Whether the Village may be held liable for maintaining a nuisance in its operation of the wastewater disposal system depends upon whether there was underlying negligent conduct on the part of the Village "otherwise actionable under the rules governing liability for negligent . . . conduct." Wisconsin Power & Light Co. v. Columbia Cty., 3 Wis. 2d 1, 11, 87 N.W.2d 279 (1958). To prove liability for negligent conduct, Pinter must therefore prove four elements: (1) the existence of a duty of care on the part of the Village; (2) a breach of that duty; (3) a causal connection between the breach of the duty of care and Pinter's injury; and (4) actual damages resulting from the breach.

¶82 The disputed issues in this case are whether the Village negligently maintained the wastewater disposal system and whether that negligence caused the wastewater to back up into Pinter's basement. The Village argues, and the majority opinion agrees, that Pinter did not present the requisite expert testimony to prove it was negligent in maintaining the wastewater disposal system. However, the majority fails to recognize that "[t]he requirement of expert testimony is an extraordinary one." White v. Leeder, 149 Wis. 2d 948, 960, 440 N.W.2d 557 (1989).

¶83 In reaching its conclusion that expert testimony is required, the majority opinion adopts the court of appeals' characterization of the Menick case and thus appears to adopt

7

the proposition that an expert witness is required as a matter of law to prove a claim for private nuisance arising out of negligent maintenance of a wastewater disposal system.[6]  Menick v. City of Menasha, 200 Wis. 2d 737, 547 N.W.2d 778 (Ct. App 1996).  However, Menick does not stand for this proposition.  In Menick, the court of appeals relied upon not only Menick's "fail[ure] to provide any expert testimony" in affirming summary judgment, but also Menick's failure "to advance any theory of liability supported by specific allegations of negligent actions on the part of the City."  Id. at 748.  Unlike in this case, the plaintiff in Menick proceeded only on a theory of strict liability and there was another potential cause of the sewage backup unrelated to the actions of the City, unprecedented rainfall.  Rather than create a bright line rule, Menick supports the conclusion that whether an expert is required to prove causation in a private nuisance claim arising out of negligent maintenance of a wastewater disposal system is fact-specific.

---

[6] The court of appeals concluded that according to Menick v. City of Menasha, 200 Wis. 2d 737, 547 N.W.2d 778 (Ct. App 1996), Pinter needed to present expert evidence demonstrating:

> (1) that water from outside sources in fact infiltrates the wastewater disposal system; (2) when the water infiltrated the system and in what amount; (3) whether that amount of infiltration was unreasonable, given the size of the system; and (4) whether the infiltration contributed to the backup in Pinter's basement.

Pinter v. Village of Stetsonville, No. 2017AP1593, unpublished slip op., ¶42 (Wis. Ct. App. Apr. 10, 2018).

8

¶84 The majority opinion gives short shrift to the evidence that Pinter presents. Pinter identifies three ways in which the storm water allegedly infiltrated the closed wastewater disposal system: (1) leaky pipes; (2) sump pumps directly pumping into the wastewater disposal system; and (3) drain tiles improperly connected to the wastewater disposal system. Pinter relies upon the testimony of David Duellman, the Director of Public Works for the Village, who testified that the wastewater disposal system is supposed to be a closed system from storm water but that water still infiltrates the system. Duellman testified that there is an eight-inch wastewater treatment line that goes up to the hill north of town and that "we believe that's where a lot of the infiltration is coming from." He further testified that sump pumps are draining into the wastewater disposal system and that some of the older homes have drain tiles that might accumulate into the wastewater disposal system. Duellman admitted that they watched the rains carefully. Moreover, Pinter testified that on October 1, 2014, when he asked why the water comes into his basement, Duellman told him that "they have some broken pipes on the north end that the water filters in from the ditch line" and that the Village did not have the over one hundred thousand dollars needed to fix them.

¶85 Pinter also presented the testimony of the Village President, Gregory Brunner, who testified that the wastewater disposal system had a problem with storm water infiltration if there was "heavy rain." Pinter also points to concessions by

9

Brunner that: (1) the Village had not enforced its own ordinance that made it illegal to connect a sump pump into the wastewater disposal system; (2) sometime after September 10, 2014, the Village created an inspection schedule to address this issue; and (3) in October 2014, the Village Board of Trustees created a formal policy which called for pumping when the wastewater reached the fourth rung, no questions asked, and that no backups have occurred in Pinter's basement since then. Pinter asserts that the testimony and common sense prove that causation in this case was uncontroverted as a matter of law or, at a minimum, raise a genuine issue of material fact.

¶86 I agree with Pinter that the inferences drawn from the testimony of the Village employees taken in the light most favorable to Pinter, the standard the majority opinion fails to acknowledge, provides a genuine issue of material fact as to whether the Village negligently maintained its wastewater disposal system and whether this negligence was a substantial factor in the wastewater backup into Pinter's basement.[7] This issue is not nuanced and complex, as the majority opinion asserts. Instead, water infiltration, wastewater disposal system overflows, seepage of wastewater into homes, and related issues are all within the capability of jurors to understand and

_____

[7] Pursuant to Wis. Stat. § 907.02, experience may qualify someone as an "expert": "a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion." Pinter never raised the issue of whether Duellman's experience qualified him to testify as an expert, and therefore I will not address it.

do not require any specialized knowledge or experience. Pinter's witnesses described personal experiences with and observations of the infiltration of storm water into the closed wastewater disposal system through leaky pipes and improperly connected sump pumps and drain tiles. In addition, these witnesses reported a connection between storm water infiltration and the rising wastewater levels. This testimony, along with the application of common sense, allows the trier of fact to draw its own conclusions without the need for expert testimony. See Tews v. NHI, LLC, 2010 WI 137, ¶42, 330 Wis. 2d 389, 793 N.W.2d 860 (reasoning that "'[o]n summary judgment the court does not decide the issue of fact; it decides whether there is a genuine issue of fact'") (quoted source omitted).[8]

¶87 Accordingly, I would reverse the court of appeals as to both of Pinter's claims and remand the cause to the circuit court for further proceedings.

¶88 For the foregoing reasons, I respectfully dissent.

¶89 I am authorized to state that Justices REBECCA GRASSL BRADLEY and DANIEL KELLY join this dissent.

---

[8] While I would not require an expert in this case, it does "not close the door to the possibility that expert testimony may later assist the trier of fact." Racine Cty. v. Oracular Milwaukee, Inc., 2010 WI 25, ¶35, 323 Wis. 2d 682, 781 N.W.2d 88.