**2021 WI App 6**

# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

Case No.:           2019AP2003

Complete Title of Case:

> **GREGORY E. KNOKE AND JULIE A. KNOKE,**
>
> **PLAINTIFFS-RESPONDENTS,**
>
> **V.**
>
> **CITY OF MONROE,**
>
> **DEFENDANT-APPELLANT,**
>
> **CENTERS FOR MEDICARE AND MEDICAID SERVICES AND
> PACIFICARE LIFE AND HEALTH INSURANCE COMPANY,**
>
> **SUBROGATED DEFENDANTS.**

---

| | |
|---|---|
| Opinion Filed: | December 3, 2020 |
| Submitted on Briefs: | July 17, 2020 |

---

| | |
|---|---|
| JUDGES: | Fitzpatrick, P.J., Blanchard, and Graham |

---

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the defendant-appellant, the cause was submitted on the briefs of *Kyle W. Engelke* of *Stafford Rosenbaum, LLP*, Madison. |
| Respondent ATTORNEYS: | On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Peter J. Kind* of *Knoke, Ingebritsen & Kind Law Office*, Monroe. |

# COURT OF APPEALS
## DECISION
## DATED AND FILED

### December 3, 2020

Sheila T. Reiff
Clerk of Court of Appeals

### NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

---

Appeal No. **2019AP2003**

STATE OF WISCONSIN

Cir. Ct. No. **2017CV179**

IN COURT OF APPEALS

---

GREGORY E. KNOKE AND JULIE A. KNOKE,

PLAINTIFFS-RESPONDENTS,

V.

CITY OF MONROE,

DEFENDANT-APPELLANT,

CENTERS FOR MEDICARE AND MEDICAID SERVICES AND PACIFICARE LIFE AND HEALTH INSURANCE COMPANY,

SUBROGATED DEFENDANTS.

---

APPEAL from an order of the circuit court for Green County: STEPHEN E. EHLKE, Judge. *Reversed and cause remanded*.

Before Fitzpatrick, P.J., Blanchard, and Graham, JJ.

¶1    GRAHAM, J. Gregory Knoke slipped and fell on ice that had accumulated on the side of a street in the City of Monroe.  He filed tort claims against the City, and the City moved for summary judgment, arguing that it was immune from suit under WIS. STAT. §§ 893.80(4) and 893.83 (2017-18).[1]  The circuit court concluded that § 893.80(4) was inapplicable, and turning to § 893.83, it concluded that a disputed question of fact precluded entry of judgment in the City's favor.  We granted the City's petition for leave to appeal,[2] and we now reverse.  We do not decide whether the City is entitled to immunity under § 893.83 because that issue is not dispositive.  Even if the City is not entitled to immunity under that statute, it nevertheless is entitled to immunity under § 893.80(4).

## BACKGROUND

¶2    In January 2017, Knoke slipped and fell on the street outside of his office in the City of Monroe.  He contends that the City negligently allowed snow and ice to accumulate on the side of the street and is liable for his alleged injuries.  We present additional facts about Knoke's allegations as needed in the discussion section below.

¶3    The City moved for summary judgment.  The parties' arguments addressed the potential applications of two related statutes, WIS. STAT. §§ 893.80

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise stated.  Also party to this suit are plaintiff Julie Knoke, who brought derivative claims as Gregory Knoke's wife, as well as subrogated defendant Centers for Medicare and Medicaid Services and PacifiCare Life and Health Insurance Company.  These parties do not make any argument that differs from those made by Gregory Knoke or the City of Monroe, so we do not further discuss their roles in this case.

[2] *See* WIS. STAT. RULE 809.50(3).

2

and 893.83, each of which grants immunity to government actors under various circumstances.

¶4 WISCONSIN STAT. § 893.80(4) provides that no suit may be brought against a governmental entity, its agents, or its employees "for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions." This language immunizes governmental entities from suit for "any acts that involve the exercise of discretion." *Engelhardt v. City of New Berlin*, 2019 WI 2, ¶22, 385 Wis. 2d 86, 921 N.W.2d 714. For ease of reference, we sometimes refer to § 893.80 as the "discretionary immunity statute."

¶5 WISCONSIN STAT. § 893.83 also concerns governmental immunity, but it specifically pertains to injuries allegedly sustained due to snow and ice accumulations. It provides that "no action may be maintained against [a municipality] to recover damages for injuries sustained by reason of an accumulation of snow or ice upon any bridge or highway, unless the accumulation existed for 3 weeks." Section 893.83. In so doing, it "accords a municipality a limited three-week period of immunity" from suit. *Damaschke v. City of Racine*, 150 Wis. 2d 279, 283, 441 N.W.2d 332 (Ct. App. 1989) (interpreting a prior version of the statute). Following the parties' lead, we refer to this immunity as "absolute immunity" so as to distinguish it from the immunity provided in the discretionary immunity statute. Once the three-week period of absolute immunity has passed, § 893.83 expressly subjects a claim based on a snow or ice accumulation to the discretionary immunity statute: "Any action to recover damages for injuries sustained by reason of an accumulation of snow or ice that has existed for 3 weeks or more upon any bridge or highway is subject to [WIS. STAT. §] 893.80."

¶6     During the circuit court proceedings on summary judgment, the City argued that it was entitled to immunity under both statutes.  The City argued that it was entitled to absolute immunity under WIS. STAT. § 893.83 because Knoke could not prove that the snow and ice accumulation in question had existed for at least three weeks.  And the City argued that, even if the accumulation had existed for three weeks or more, Knoke's claim was barred by WIS. STAT. § 893.80(4) because the City has discretion in how to address such accumulations.

¶7     Knoke argued that the City was not entitled to absolute immunity for two reasons.  First, he argued that the accumulation he slipped on was "artificial" rather than "natural."  *See Sambs v. City of Brookfield*, 66 Wis. 2d 296, 304, 224 N.W.2d 582 (1975) ("This court has held that the three-week requirement of the statute applies only where the accumulation is 'natural' as opposed to 'artificial.'").  Second, he argued that there was a factual dispute as to how long the accumulation had existed before the accident.  Turning to the City's arguments for discretionary immunity, Knoke argued that "the removal of snow and ice is not a legislative, quasi-legislative, judicial, or quasi-judicial function" and that an exception to discretionary immunity applied.

¶8     The circuit court concluded that the accumulation was natural rather than artificial and, therefore, that the City might be entitled to summary judgment if the accident had occurred during the three-week period of absolute immunity.  However, the court determined there was an unresolved fact question on that issue and therefore declined to grant summary judgment in the City's favor.  Turning to the discretionary immunity statute, the court ruled in Knoke's favor, denying summary judgment to the City based on a ground that neither party had advanced.  The court determined that the discretionary immunity statute does not apply to snow or ice accumulations that have existed for three weeks or more, despite the

plain language of WIS. STAT. § 893.83 subjecting such claims to WIS. STAT. § 893.80.  The court reasoned that, if § 893.83 were read literally to mean that the City has discretionary immunity after three weeks of natural accumulation, then § 893.83 would be superfluous.  The court also reasoned that, "if … the legislature meant to limit liability" for snow and ice removal after the three-week period, it would "have gotten rid of s. 893.83 in its entirety."  The court also concluded that § 893.83 creates a "specific" and "clear duty to remove snow and ice" after three weeks.  We granted the City's petition for interlocutory review.

## DISCUSSION

¶9      "We review de novo the grant of summary judgment, employing the same methodology as the circuit court." *Palisades Collection LLC v. Kalal*, 2010 WI App 38, ¶9, 324 Wis. 2d 180, 781 N.W.2d 503.  Summary judgment is appropriate when "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08.

¶10     Whether the City is entitled to summary judgment turns on the interpretation and application of statutes, which is also a question of law that we review de novo. *Nowell v. City of Wausau*, 2013 WI 88, ¶19, 351 Wis. 2d 1, 838 N.W.2d 852.  The goal of statutory interpretation is to discern the intent of the legislature. *State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110.  This inquiry "begins with the language of the statute." *Id.*, ¶45 (quoting *Seider v. O'Connell*, 2000 WI 76, ¶43, 236 Wis. 2d 211, 612 N.W.2d 659).  We also examine the statute's scope, history, context, subject matter, and purpose to ascertain its meaning. *Id.*, ¶¶46, 48.

## I. Whether WIS. STAT. § 893.80(4) Applies to Claims Based on Snow and Ice Accumulations That Have Existed for Three Weeks or More

¶11 As we have explained, this case involves the meaning of two related governmental immunity statutes, WIS. STAT. §§ 893.80 and 893.83. And as noted above, the circuit court concluded that claims based on snow and ice accumulations are exclusively the province of § 893.83, and that the discretionary immunity set forth in § 893.80(4) has no application to claims based on snow and ice accumulations that had lasted for three weeks or more. Although Knoke did not advance this argument before the circuit court, he advances it now on appeal.

¶12 Knoke's primary argument is based on *Morris v. Juneau County*, 219 Wis. 2d 543, 579 N.W.2d 690 (1998). In that case, our supreme court concluded that claims allowed under an early version of WIS. STAT. § 893.83 were not subject to the discretionary immunity provided in WIS. STAT. § 893.80(4). *Morris*, 219 Wis. 2d at 553. To evaluate this and other related arguments, it is helpful to briefly recount the history of governmental immunity, and to consider how the historic relationship between these two statutes has recently changed as a result of the enactment of 2011 Wis. Act 132. After setting forth this history, we address and reject each of Knoke's arguments in turn.

### A. The Histories of WIS. STAT. §§ 893.80 and 893.83

¶13 Under the common law and up through the 1960s, the government was immune from tort liability as a general rule. *Morris*, 219 Wis. 2d at 553. Government liability could exist under certain circumstances, but these circumstances were exceptions to the common law rule.

¶14 One of the early statutory exceptions to the common law rule of immunity was enacted soon after Wisconsin became a state, and is the predecessor

of the modern WIS. STAT. § 893.83. WIS. REV. STAT. ch. 16, § 103 (1849). Initially, the express purpose of this statute was to *allow* suits against governmental entities for injuries caused by "insufficiency or want of repairs of any highway." *See Morris*, 219 Wis. 2d at 553. Based on this language (which has now been repealed), the statute was commonly known as the "highway defect" statute. *See Weiss v. City of Milwaukee*, 79 Wis. 2d 213, 222, 255 N.W.2d 496 (1977). For ease of reference, we sometimes use that term when referring to early versions of § 893.83.

¶15 In 1899, the highway defect statute was amended to insulate municipalities from liability based on a wintertime condition of Wisconsin highways—accumulations of snow or ice that have existed for less than three weeks. *See* 1899 Wis. Laws, ch. 305 (amending the statute to provide that "no action shall be maintained to recover damages for injuries sustained by reason of an accumulation of snow or ice upon any bridge or highway, unless such accumulation shall have existed for three weeks"). In other words, the legislature carved out an exemption to the highway defect exception to common law immunity. The language that the legislature used in 1899 to describe this exemption is substantially identical to the language of the current statute.

¶16 In *Holytz v. City of Milwaukee*, 17 Wis. 2d 26, 115 N.W.2d 618 (1962), our supreme court abrogated the common law government immunity doctrine. *Holytz* announced that "henceforward, so far as governmental responsibility for torts is concerned, the rule is liability—the exception is immunity." *Id.* at 39. It clarified, however, that governmental entities continued to be immune from suit when they exercised their "legislative or judicial or quasi-legislative or quasi-judicial functions." *Id.* at 40.

¶17    In response, the legislature enacted the predecessor of the discretionary immunity statute.[3]  The newly created statute had substantive and procedural components.  Substantively, the statute provided immunity for acts done in the exercise of "legislative, judicial, quasi-legislative, and quasi-judicial functions."  WIS. STAT. § 331.43(3) (1963-64).  This language codified this aspect of *Holytz* and has been broadly interpreted to be "synonymous with discretionary acts."  *Willow Creek Ranch, L.L.C. v. Town of Shelby*, 2000 WI 56, ¶25, 235 Wis. 2d 409, 611 N.W.2d 693.  Procedurally, the discretionary immunity statute required plaintiffs who sued governmental entities to comply with certain notice requirements, § 331.43(1), and it also capped the damages that plaintiffs could recover against government actors, § 331.43(2).[4]  In the same year that the legislature created the discretionary immunity statute, it amended the highway defect statute to provide notice requirements and damages caps identical to those in the discretionary immunity statute.  *See* 1963 Wis. Laws, ch. 305; *Morris*, 219 Wis. 2d at 554.

¶18    The legislature next amended the highway defect statute in 1977. 1977 Wis. Laws, ch. 285, § 5; *Morris*, 219 Wis. 2d at 555.  Among other changes, it removed that statute's notice provisions and replaced them with language specifying that "[t]he procedures under [the discretionary immunity statute] shall

---

[3] *See* 1963 Wis. Laws, ch. 198 (creating WIS. STAT. § 331.43 (1963-64), now numbered WIS. STAT. § 893.80).

[4] Like its predecessor, the current statute also provides similar procedural requirements and damages caps.  *See* WIS. STAT. § 893.80(1d)-(1m) (requiring plaintiffs to provide written notice of most claims within 120 days of the incident); § 893.80(3) (capping damages for most claims at $50,000).

apply to the commencement of actions brought under this section." 1977 Wis. Laws, ch. 285, § 5.

¶19    Our supreme court interpreted this new language in 1998 in *Morris*, 219 Wis. 2d 543. The court explained that, although the *procedural* aspects of the discretionary immunity statute applied to a claim brought under the highway defect statute, the actual *grant of immunity* in the discretionary immunity statute did not apply to highway defect claims. *Id.* at 558-59. Stated differently, the *Morris* court determined that a municipality could be sued for "insufficiency or want of repairs of any highway" *regardless* of whether the acts giving rise to the claim were discretionary. *See id.* at 561.

¶20    Following *Morris*, the legislature enacted 2011 Wis. Act 132, which made substantial revisions to the highway defect statute. Specifically, the legislature repealed almost all of the language in WIS. STAT. § 893.83, including the provision that had previously allowed suits against the government for injuries caused by "insufficiency or want of repairs of any highway." 2011 Wis. Act 132, § 2. After this language was omitted, the only language that remained from the prior version was the absolute immunity for snow and ice accumulations unless the accumulation existed for three weeks or more. *Id.*

¶21    The legislature also struck the language in WIS. STAT. § 893.83 that had been interpreted by *Morris*, and that subjected highway defect claims to "the procedures" of the discretionary immunity statute. The legislature replaced this with language stating that "any action" based on a snow or ice accumulation that has existed for three weeks or more is "subject to" the discretionary immunity statute. *Id.* By making these changes, the legislature "essentially nullified

*Morris*." ***Bostco LLC v. Milwaukee Metro. Sewerage Dist.***, 2013 WI 78, ¶248 n.91, 350 Wis. 2d 554, 835 N.W.2d 160 (A.W. Bradley, J., concurring).

¶22    As amended in 2011, WIS. STAT. § 893.83 now reads in its entirety as follows:

> No action may be maintained against a city, village, town, or county to recover damages for injuries sustained by reason of an accumulation of snow or ice upon any bridge or highway, unless the accumulation existed for 3 weeks.   Any action to recover damages for injuries sustained by reason of an accumulation of snow or ice that has existed for 3 weeks or more upon any bridge or highway is subject to s. 893.80.

### B.  Knoke's Arguments That the Discretionary Immunity Statute Has No Application to Snow and Ice Accumulations

¶23    Having recounted the histories of and relationship between WIS. STAT. §§ 893.80 and 893.83, we now turn to Knoke's arguments.   His primary argument is based on *Morris*, which, as explained above, concluded that claims allowed under the highway defect statute are not subject to the discretionary immunity provided in § 893.80(4).   Knoke argues that the legislature did not "repeal Wis. Stat. § 893.83 completely" when it amended the statute in 2011, and therefore, *Morris*'s interpretation of § 893.83 remains in force.

¶24    To repeat, the current version of WIS. STAT. § 893.83 states that "[a]ny action to recover damages" related to "an accumulation of snow or ice that has existed for three weeks or more … is subject to [WIS. STAT. §] 893.80." Section 893.83.  Citing *Morris*, Knoke argues that the phrase "is subject to" means only that such claims are subject to *some* of the provisions in WIS. STAT. § 893.80. He notes that § 893.80 "has 14 separate subsections," and "[t]he discretionary immunity subsection, § 893.80(4), is merely one of many paragraphs."   Knoke

does not explain exactly which provisions of § 893.80 he believes the legislature meant to apply, but presumably he means to argue that only the procedural requirements set forth in § 893.80(1d)-(1m) apply to any action based on an accumulation of snow or ice that has existed for three weeks or more.

¶25 We disagree with Knoke's interpretation. The plain meaning of the phrase "is subject to [WIS. STAT. §] 893.80" embraces all of that statute's subparts, including the grant of discretionary immunity found in § 893.80(4), and Knoke fails to provide any basis for us to conclude otherwise. Further, and more broadly, Knoke's argument fails to account for the sweeping changes that the legislature made to WIS. STAT. § 893.83 when it enacted 2011 Wis. Act 132. Not only did the legislature remove the language permitting claims against municipalities based on highway defects, it also broadened the language linking § 893.83 to the discretionary immunity statute. As explained above, at the time **Morris** was issued, the statute provided that "[t]he *procedures* under s. 893.80 shall apply" to claims governed by § 893.83. WIS. STAT. § 81.15 (1991-92) (emphasis added). In 2011, the legislature removed the reference to "procedures" and replaced it with broader language stating that any action involving events after the three-week period of absolute immunity is "subject to s. 893.80." 2011 Wis. Act 132, § 2. If we were to accept Knoke's argument, we would have to conclude that the legislature did not intend to make any change at all when it amended this language. Knoke's argument is contrary to the plain meaning of the statute as amended, and it is also contrary to our presumption that the legislature "intends to change the law" when it amends a statute. **Lang v. Lang**, 161 Wis. 2d 210, 220, 467 N.W.2d 772 (1991).

¶26 We now turn to Knoke's remaining arguments on this issue and explain why they are unavailing.

¶27     First, Knoke cites the principle that a "specific statute takes precedence over a general statute."  He argues that "since WIS. STAT. § 893.83 is specific and WIS. STAT. § 893.80(4) is general, § 893.83 takes precedence over § 893.80(4)."  The principle of statutory interpretation that Knoke cites has no application here because there is no conflict between the two statutes.  As we have explained, § 893.83 expressly provides that the general discretionary immunity statute, § 893.80, applies to claims based on snow or ice accumulations that have existed three weeks or more.

¶28     Second, Knoke quotes the circuit court's conclusion that the statute cannot mean what it appears to say—that the discretionary immunity provisions in WIS. STAT. § 893.80(4) apply to claims based on snow or ice accumulations that have existed for three weeks or more—because this would render "the entirety of [WIS. STAT. §] 893.83 superfluous."  We disagree.  The first sentence of § 893.83 grants municipalities a period of "absolute immunity" for claims based on snow and ice accumulations that have existed less than three weeks.  That is, this sentence provides an exception to the general rule that municipalities are immune from liability only if their acts were "discretionary."  Plainly, this language is not superfluous.  And the second sentence of § 893.83 clarifies that immunity is not absolute if the snow or ice accumulation has existed for three weeks or more— under such circumstances, a claim is "subject to § 893.80," like any other tort claim against a municipality.  This language expressly supersedes *Morris*'s interpretation of the statute, providing that *all* of WIS. STAT. § 893.80—not only the procedural requirements of that statute—apply to such claims.  Therefore, this language is not superfluous.

¶29     Finally, Knoke argues that, to accomplish the same end, the legislature could have "simply deleted [WIS. STAT.] § 893.83 completely and

added the three-week period of absolute immunity to [WIS. STAT.] § 893.80(4)." This may have been a different approach, but that does not mean that the legislature was required to follow that approach to accomplish the result that is plainly expressed by the statutory language.

¶30   Accordingly, we conclude that WIS. STAT. § 893.83 unambiguously subjects claims based on snow and ice accumulations that have existed three weeks or more to the discretionary immunity provisions set forth in WIS. STAT. § 893.80(4).  Our conclusion is confirmed by the legislative history of 2011 Act 132.[5]  In the memo accompanying the proposed 2011 amendments, the Wisconsin Legislative Council explained the legislative intent as follows:

> 2011 Wisconsin Act 132 eliminates the statutory provision under which municipalities may be held liable for damages resulting from the insufficiency or want of repair of a highway the municipality is bound to keep in repair.  It retains the provision specifying that a municipality may not be held liable for damages sustained by reason of an accumulation of snow or ice upon a bridge or a highway unless the accumulation has existed for three weeks or more *and subjects these claims to the general statute governing claims against governmental bodies*.

David Moore, Wis. Legislative Council Act Memo:  2011 Wis. Act 132, Municipal Liability for Damages Caused by Highway Defects (March 29, 2012) (emphasis added).  This history confirms our interpretation of § 893.83.

---

[5] *See* **State ex rel. Kalal v. Circuit Court for Dane Cnty.**, 2004 WI 58, ¶51, 271 Wis. 2d 633, 681 N.W.2d 110 ("[L]egislative history is sometimes consulted to confirm or verify a plain-meaning interpretation" of statutory language.).

## II. Whether the City is Entitled to Summary Judgment

¶31    Having decided that the absolute immunity statute and the discretionary immunity statute both apply to claims based on accumulations of snow or ice, we now turn to the parties' arguments about whether the City is entitled to summary judgment.  The City contends that it is entitled to absolute immunity under WIS. STAT. § 893.83, and that it is also entitled to discretionary immunity under WIS. STAT. § 893.80(4).

¶32    A significant portion of each of the parties' briefs is devoted to the absolute immunity provisions of WIS. STAT. § 893.83.  The parties' arguments focus on whether the accumulation at issue was "natural" or "artificial," and whether it had existed for three weeks or more.  But even if Knoke were to persuade us that the City was not entitled to absolute immunity for one reason or another, our answer to that question would not be dispositive.  We would still have to decide whether the City is entitled to discretionary immunity under WIS. STAT. § 893.80(4).  For reasons we explain below, we conclude that the discretionary immunity provided in § 893.80(4) bars Knoke's claims.  Our answer to this question is dispositive, and therefore, we need not address the parties' arguments about whether the City would also be entitled to absolute immunity under § 893.83.  *See **Barrows v. American Family Ins. Co.***, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.")

¶33    We begin our analysis by further describing the grant of discretionary immunity found in WIS. STAT. § 893.80(4) and its exceptions.  As explained above, § 893.80(4) generally immunizes the government from suit for "any acts that involve the exercise of discretion."  ***Engelhardt***, 385 Wis. 2d 86,

¶22.    Immunity for discretionary acts is "based largely upon public policy considerations that spring from the interest in protecting the public purse and a preference for political rather than judicial redress for the actions of public officers." ***Lodl v. Progressive N. Ins. Co.***, 2002 WI 71, ¶23, 253 Wis. 2d 323, 646 N.W.2d 314.  Discretionary immunity also serves separation of powers principles by ensuring that courts do not use tort law to "pass judgment on the policy decisions made by coordinate branches of government." ***Schmeling v. Phelps***, 212 Wis. 2d 898, 911, 569 N.W.2d 784 (Ct. App. 1997).

¶34    Certain circumstances are not protected by discretionary immunity, and these include "the performance of ministerial duties imposed by law" and "known and compelling dangers that give rise to ministerial duties on the part of public officers or employees[.]"[6] ***Lodl***, 253 Wis. 2d 323, ¶24.  These exceptions "overlap to an extent, inasmuch as they both require the identification of a ministerial duty." ***Pries v. McMillon***, 2010 WI 63, ¶24, 326 Wis. 2d 37, 784 N.W.2d 648.

¶35    "[T]he ministerial duty exception is not so much an exception as a recognition that immunity law distinguishes between discretionary and ministerial acts, immunizing the performance of the former but not the latter." ***Lodl***, 253 Wis. 2d 323, ¶25.  A ministerial duty exists when the government has a duty that is "absolute, certain and imperative, involving merely the performance of a specific task when the law imposes," and this duty "prescribes and defines the time, mode

---

[6] The two other exceptions—not argued in this case—are "acts involving medical discretion" and "acts that are malicious, willful, and intentional." ***Lodl v. Progressive N. Ins. Co.***, 2002 WI 71, ¶24, 253 Wis. 2d 323, 646 N.W.2d 314.

and occasion for its performance with such certainty that nothing remains for judgment or discretion." *Engelhardt*, 385 Wis. 2d 86, ¶32 (quoting *Lister v. Board of Regents of Univ. Wis. Sys.*, 72 Wis. 2d 282, 301, 240 N.W.2d 610 (1976)).

¶36    "The application of the immunity statute and its exceptions involves the application of legal standards to a set of facts, which is a question of law." *Lodl*, 253 Wis. 2d 323, ¶17.  Our analysis "assumes negligence, focusing instead on whether the municipal action (or inaction) upon which liability is premised is entitled to immunity under the statute, and if so, whether one of the judicially-created exceptions to immunity applies."[7] *Id.*

¶37    We now turn to the parties' arguments as to whether the acts underlying Knoke's claims were discretionary or ministerial.  Broadly speaking, Knoke's theory of liability is that the City negligently created the snow and ice accumulation that he slipped on by "plowing snow into the gutter outside [his] office" throughout the winter, "thereby preventing normal melt water drainage." Because the City's plowing pattern prevented water from draining, "[s]tormwater run-off from precipitation and/or melting snow was not able to flow efficiently through the street" and "patches of ice accumulated at the edge of the snow piles,

---

[7] Knoke argues that it is the City's burden to prove that discretionary immunity applies. For this principle, he cites *Showers Appraisals, LLC v. Musson Bros.*, 2013 WI 79, 350 Wis. 2d 509, 835 N.W.2d 226, which concluded that, when a government contractor seeks to avail itself of discretionary immunity, it must prove that it "meets the definition of 'agent' under Wis. Stat. § 893.80(4)" and that its "act is one for which immunity is available under § 893.80(4)." *Id.*, ¶2. Knoke develops no argument as to why *Showers* stands for the broader proposition that governmental entities *always* bears the burden of proof on immunity issues. We need not and do not determine which party bears the burden here because, as explained below, the record conclusively shows that the City is entitled to discretionary immunity.

formed by the freeze/thaw cycle," creating a slippery "ice ramp." Knoke also alleges that this "ice ramp" constituted a public and private nuisance. Because our analysis assumes negligence, we assume that Knoke's allegations are true and that the City was negligent in the manner he alleges. *Lodl*, 253 Wis. 2d 323, ¶17.

¶38 The City argues that Knoke's claims are based on alleged acts that were discretionary, not ministerial, and discretionary immunity therefore bars his claims. To demonstrate the discretionary nature of the actions it takes to clear snow and ice from the street, the City cites a portion of its "Snow and Ice Control Policy" that applies to the street on which Knoke fell:

> The City of Monroe Street and Park Departments endeavor to maintain adequate traction for pedestrians and vehicles. This does not mean that bare, dry pavement or walks should be expected after each snowfall or ice storm. Furthermore, this does not mean the streets will be free of ice and snow.

The City argues that its decision to pass this policy was discretionary, and that to the extent that the policy prescribes a legal duty, the City complied with that duty.

¶39 Knoke's arguments as to why discretionary immunity does not bar his claims fall into four general categories. We address each in turn.

### A. Discretionary Immunity for Nuisance Claims

¶40 Knoke argues that discretionary immunity does not apply to nuisance claims, citing our decision in *Hillcrest Golf & Country Club v. City of Altoona*, 135 Wis. 2d 431, 439-40, 400 N.W.2d 493 (Ct. App. 1986). In that case, we stated that "[t]he creation and maintenance of private nuisances are simply not recognized as legislative acts subject to protection under [WIS. STAT. §] 893.80(4)." *Id.*

¶41 To the extent ***Hillcrest*** concludes that nuisance claims against a governmental entity are exempt from discretionary immunity, that conclusion has been expressly overruled by our supreme court.[8] Under current law, nuisance claims—like other tort claims—are barred under WIS. STAT. § 893.80(4) if they are "predicated on negligent acts that are discretionary in nature," but they may proceed if predicated on "acts performed pursuant to a ministerial duty." ***Pinter v. Village of Stetsonville***, 2019 WI 74, ¶54, 387 Wis. 2d 475, 929 N.W.2d 547 (quoting ***Milwaukee Metro. Sewerage Dist. v. City of Milwaukee***, 2005 WI 8, ¶8, 277 Wis. 2d 635, 677, 691 N.W.2d 658). Accordingly, for Knoke's nuisance claim and his negligence claim alike, whether the claim is subject to discretionary immunity depends on the character of the underlying acts: whether they were discretionary or instead involved a ministerial duty.

## B. "Legislative, Quasi-Legislative, Judicial, or Quasi-Judicial Function"

¶42 Knoke argues that plowing snow is not "a legislative, quasi-legislative, judicial, or quasi-judicial function." He relies on a 2013 case from our supreme court which stated that "the legislatively selected policy decision regarding immunity under WIS. STAT. § 893.80(4) is best honored by applying the legislature's chosen plain language, rather than a judicial distillation thereof." ***Showers Appraisals, LLC v. Musson Bros.***, 2013 WI 79, ¶35, 350 Wis. 2d 509, 835 N.W.2d 226. Relying on this language, he appears to argue that Wisconsin

---

[8] *See* ***Milwaukee Metro. Sewerage Dist. v. City of Milwaukee***, 2005 WI 8, ¶59 n.17, 277 Wis. 2d 635, 691 N.W.2d 658 (stating the immunity analysis for a nuisance claim depends on the "character of the tortious acts underlying the nuisance," and stating that ***Hillcrest***'s apparent conclusion to the contrary was the result of erroneous reliance on "immunity jurisprudence that predated ***Holytz*** and [WIS. STAT.] § 893.80(4)").

law no longer examines whether governmental actions were "discretionary" for purposes of determining whether a governmental entity is immune from suit under § 893.80(4).

¶43　　Knoke fails to acknowledge that *Showers* expressly stated that its decision was "not intended in any way to alter that standard," *id.*, and in any event, *Showers* is not the most recent statement of the law on this issue.  In *Engelhardt*, which was decided six years after *Showers*, our supreme court rejected the plaintiff's argument that it should depart from its longstanding interpretation of "legislative, quasi-legislative, judicial, or quasi-judicial" as synonymous with "discretionary."  *Engelhardt*, 385 Wis. 2d 86, ¶68.  The court explained that to do so would be "to reverse course on the past 40 years of Wisconsin jurisprudence interpreting the governmental immunity statute."  *Id.*  Instead, the court reaffirmed that the statutory language distinguishes between discretionary and ministerial acts, immunizing the government from tort claims based on the former but not the latter.  *Id.*, ¶¶22 & n.10, 32.

## C.  Ministerial Duty Imposed by Law

¶44　　Knoke makes two arguments that the City breached a ministerial duty imposed by law.  First, he argues that the Snow and Ice Policy imposed a ministerial duty to at least "attempt[] to remove the snow and ice from the gutter

19

outside Knoke's office."  Second, he argues that a city ordinance prohibited the City from plowing snow into street gutters.[9]

¶45     We begin by addressing the language in the City's Snow and Ice Control Policy stating that the City "endeavor[s] to maintain adequate traction for pedestrians and vehicles."  Knoke argues that this language creates a ministerial duty requiring the City to at least "attempt" to remove snow and ice accumulations.  He argues that the City breached this duty, and, without citation to the record, he asserts that "multiple witnesses have stated the City never even attempted to remove the snow and ice from the gutter area in front of Knoke's office."

¶46     We do not agree that this language in the Snow and Ice Control Policy creates a ministerial duty imposed by law, and therefore we need not determine whether the record supports Knoke's assertions.  Assuming without deciding that the policy created a legal duty, and that the City negligently breached that assumed duty, that does not mean that the City breached any *ministerial* duty.  Not all duties are ministerial—to the contrary, "for a duty to be ministerial, a public officer must be not only bound to act, but also bound by law to act in a very particular way[.]"  *Yao v. Chapman*, 2005 WI App 200, ¶29, 287 Wis. 2d 445, 705 N.W.2d 272.  Specifically, as explained above, a duty is ministerial only when it "prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion."  *Engelhardt*, 385

---

[9] The circuit court appeared to conclude that WIS. STAT. § 893.83 itself creates a ministerial duty imposed by law, stating that the statute sets forth a "specific" and "clear duty to remove snow and ice" within three weeks.  The court did not identify any language in the statute that would create such a duty, and Knoke does not advance this argument on appeal.

Wis. 2d 86, ¶32 (quoting *Lister*, 72 Wis. 2d at 301). Knoke does not explain how a policy that provides that the City "endeavor[s] to maintain adequate traction for pedestrians and vehicles" could create any ministerial duty. Plainly, this language affords great discretion to the City in how it controls snow and ice, and it does not set forth the "time, mode and occasion" for the performance of any specific actions.[10]

¶47　Knoke also argues that a city ordinance created a ministerial duty to avoid plowing snow into the gutters. Knoke points to CITY OF MONROE CODE § 11-1-2(O), which makes it unlawful for any "person … [t]o place in or over any gutter any material or object of any nature which may obstruct the flow of water therein" without a permit.

¶48　We need not decide whether CITY OF MONROE CODE § 11-1-2(O) creates a ministerial duty because we conclude that the City is not a "person" for the purposes of that ordinance. A "governmental agency" is a "person" for the purposes of the Monroe City Code only when it is "appropriate to the context," *see*

---

[10] Some of Knoke's arguments appear to ask us to pass judgment on the wisdom of the City's Snow and Ice Control Policy, even though *Showers* expressly recognized that "legislative and quasi-legislative functions" include "policy choices made in an official capacity[.]" *Showers*, 350 Wis. 2d 509, ¶35. For example, Knoke suggests that the City should have designated the street where he fell as a "snow route" so that it would be "subject to a heightened snow removal policy." But whether a street should be designated a "snow route" is plainly a discretionary decision involving many factors that courts are not suited to weighing. For example, if an area is designated as a "snow route," this means, per the City's Snow and Ice Control Policy, that "all vehicles must be removed from the street by 2:00 AM for snow removal" whenever there is accumulation of two inches or more so that the City can focus snow removal efforts on that location. Accordingly, a municipality's decision to designate a particular street as a snow route may involve, at minimum, consideration of factors such as traffic flow, available snow removal resources including labor and equipment, and the inconvenience to the public in restricting parking.

CITY OF MONROE CODE, § 1-3-2, and interpreting § 11-1-2(O) to apply to the City's efforts to plow the streets would lead to absurd results. Assuming without deciding that § 11-1-2(O) prohibits any "person" from plowing snow in a way that moves some snow into a city gutter, if this prohibition applied to the City, it would have to obtain a permit from itself in order to plow its own streets, or else would have to avoid plowing near city gutters entirely. Because it would not be "appropriate to the context" to deem the City a "person" for the purposes of § 11-1-2(O), we conclude that that ordinance does not require the City to obtain a permit to plow its own streets.

### D. Known and Compelling Danger

¶49 Finally, Knoke argues that the City is not entitled to discretionary immunity because the alleged "ice ramp" at issue was a "known and compelling danger."

¶50 The known and compelling danger exception to discretionary immunity applies when an "'obviously hazardous situation'" known to a public officer is "'of such force that the time, mode and occasion for performance is evident with such certainty that nothing remains for the exercise of judgment and discretion,'" thereby creating "a ministerial duty to correct the situation." *Engelhardt*, 385 Wis. 2d 86, ¶5 (quoting *Lodl*, 253 Wis. 2d 323, ¶38). "In order for the known and compelling danger exception to apply, a three-step test must be fulfilled." *Pinter*, 387 Wis. 2d 475, ¶51 n.11. First, something must occur to create a compelling danger; second, a governmental actor must find out about the compelling danger; and third, the governmental actor either takes or fails to take precautionary measures. *Id.* If the government does not take precautionary measures, the known and compelling danger exception applies. *Id.*

¶51     Knoke argues that "the compelling danger was the growing snow and ice ramp" created by the City's alleged negligent plowing practices, and that the danger was known because "[t]he City was notified of the situation several times[.]"[11] For the reasons below, we are not persuaded by Knoke's arguments.

¶52     First, it is not clear from the record that the danger of the "ice ramp" was "known" to the City. Knoke's argument on this element refers to the affidavit of William Huston, who averred that "during the winters of 2015 and 2016, [he] commented to City street crews that they needed to remove the snow and ice from the streets" in front of Knoke's office, and also that he had "mentioned something to [the workers] before January 12, 2017," the day that Knoke was injured. Knoke does not explain how Huston's general statements to city employees that they "needed to remove the snow and ice" sufficed to inform the City that the area where Knoke fell was especially dangerous.

¶53     Second, even if the condition of the street was "known" to the City, the danger was not sufficiently "compelling" to give rise to a ministerial duty.

¶54     The known and compelling danger exception "'has been reserved for situations that are more than unsafe, where the danger is so severe and so

---

[11] Knoke also asserts that the City had "constructive notice" of the hazardous conditions where Knoke slipped and fell because it had "been salting and plowing all roads in Monroe." But Knoke does not explain how these general acts would give the City knowledge of the specific condition in the area where Knoke fell. Additionally, Knoke cites no authority for the proposition that "constructive notice" is sufficient to make a danger "known" for the purposes of the known and compelling danger exception. The only authority Knoke cites on this issue is *Physicians Plus Ins. Corp. v. Midwest Mut. Ins. Co.*, 2002 WI 80, ¶26, 254 Wis. 2d 77, 646 N.W.2d 777, which does not involve discretionary immunity or the known and compelling danger exception. Our supreme court in that case did consider the issue of constructive notice, but this is because it addressed a public nuisance claim, one element of which expressly considers whether the defendant has "actual or constructive notice of the public nuisance." *Id.*, ¶2.

immediate' that a response is demanded." *Umansky v. ABC Ins. Co.*, 2009 WI 82, ¶13 n.7, 319 Wis. 2d 622, 769 N.W.2d 1 (quoting *Umansky v. ABC Ins. Co.*, 2008 WI App 101, ¶70, 313 Wis. 2d 445, 756 N.W.2d 601). For example, in *Cords v. Anderson*, 80 Wis. 2d 525, 259 N.W.2d 672 (1977), a park manager took no action to warn hikers about the dangers of a trail where "one misstep" would lead to a fall to the "rock bottom" of a deep gorge. *Id.* at 532. When hikers fell into the gorge and were injured, the court concluded that the known and compelling danger exception applied. *Id.* at 531-36, 542. In *Voss ex rel. Harrison v. Elkhorn Area Sch. Dist.*, 2006 WI App 234, 297 Wis. 2d 389, 724 N.W.2d 420, a teacher required young children to wear "fatal vision goggles" replicating a .10 blood alcohol concentration and perform exercises that involved chasing tennis balls between desks. *Id.*, ¶¶1-4. When a student was injured after tripping and falling into a desk, we concluded that the known and compelling danger exception applied. *Id.*, ¶23. In *Englehardt*, a field trip supervisor was aware that a young child could not swim, but nevertheless "did nothing" with this information and allowed the child to attend a field trip unsupervised at a busy waterpark. *Engelhardt*, 385 Wis. 2d 86, ¶¶54-55. When the child tragically drowned, the court concluded that the known and compelling danger exception applied. *Id.*, ¶61.

¶55 By contrast, the danger Knoke points to—snow and ice on the side of a Wisconsin street in winter—is far less severe and immediate. It is beyond dispute that even the best-maintained Wisconsin roadways are, at least at times, icy and slippery in the winter. Knoke acknowledges that "ice ramps" such as the one he slipped on are not unusual, asserting that "anyone who has lived through a Wisconsin winter" is familiar with them. Although ice on the side of a street can

be unsafe, it presents a much lesser degree of danger than, for example, a hiking trail where a misstep could cause the hiker to fall into a rocky gorge.

¶56     We need not decide whether an accumulation of snow and ice could ever give rise to a ministerial duty in order to determine that it did not do so here. We conclude that what Knoke acknowledges to have been a commonplace icy condition on the street where he was injured did not create a danger "so severe and so immediate that a response [was] demanded."  To conclude otherwise would ignore the realities that Wisconsin pedestrians are accustomed to icy winter conditions and that a Wisconsin municipality will never be able to address every potentially unsafe snow and ice accumulation on its roadways and must instead exercise its discretion in determining how and when to respond to them.  *Cf. Ellerman v. City of Manitowoc*, 2003 WI App 216, ¶13, 267 Wis. 2d 480, 671 N.W.2d 366 (noting that there are "limited governmental resources" for "harsh Wisconsin winters").  Accordingly, we conclude that the known and compelling danger exception does not apply.

¶57     Having rejected Knoke's arguments that the City is not entitled to discretionary immunity, we conclude that WIS. STAT. § 893.80(4) bars his claims.

## CONCLUSION

¶58     For all these reasons, we conclude that the City is entitled to summary judgment in its favor on Knoke's claims.  We reverse the circuit court's decision denying summary judgment and remand with instructions to enter summary judgment in the City's favor.

*By the Court.*—Order reversed and cause remanded.