COURT OF APPEALS
DECISION
DATED AND FILED

March 19, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.  **2023AP1867**

STATE OF WISCONSIN

Cir. Ct. No.  2017CV504

IN COURT OF APPEALS
DISTRICT II

CINDY ROGERS AND PAUL ROGERS,

    PLAINTIFFS-APPELLANTS,

  V.

SLINGER SCHOOL DISTRICT,

    DEFENDANT-RESPONDENT,

ACUITY, A MUTUAL INSURANCE COMPANY,

    DEFENDANT.

        APPEAL from an order of the circuit court for Washington County: JAMES K. MUEHLBAUER, Judge. *Reversed and cause remanded*.

        Before Neubauer, Grogan and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Paul Rogers and Cindy Rogers (together, "the Rogerses") appeal from an order granting summary judgment to the Slinger School District (the "District"). The circuit court granted summary judgment on the Rogerses' claims for negligence and violation of Wisconsin's Safe Place statute, WIS. STAT. § 101.11 (2023-24),[1] after concluding the District was immune from liability under WIS. STAT. § 893.80(4). The Rogerses assert that the court erred in granting summary judgment because the circumstances surrounding Cindy's[2] injury fall within the "known danger" exception to § 893.80(4) immunity. On review, we conclude that the undisputed facts before the court established all of the elements of the exception. Therefore, the court erred in granting summary judgment to the District.

¶2 The Rogerses also challenge the circuit court's decision to grant the District's motion to vacate a default judgment that was entered after the District failed to timely answer the complaint. The court granted the District's motion under WIS. STAT. § 806.07(1)(h), and the Rogerses assert that was error because the court did not analyze whether the District's failure to timely answer was the result of excusable neglect under WIS. STAT. § 801.15(2)(a). We agree with the District that the court did not need to find that the District's failure to timely answer was the product of excusable neglect in order to vacate the default

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

[2] To distinguish Cindy Rogers from the Rogerses as a married couple, we refer to Cindy Rogers by her first name in this opinion.

judgment under § 806.07(1)(h). Furthermore, because the Rogerses do not contend that the court's decision to grant relief under § 806.07(1)(h) was an erroneous exercise of discretion, they have not established a basis to disturb the court's decision to grant relief from the default judgment.

## BACKGROUND

¶3      Slinger High School hosted a Snowball Dance for its students on January 31, 2015.  In preparation for the dance, workers from Tasc Services, the District's custodial service provider, moved the bleachers in the high school's gym.  One set of bleachers consisted of two sections that were positioned side by side, with a staircase running up the middle between rows of seats to the left and right.  The Tasc employees positioned the folded-up sections next to each other against a gym wall and then pulled out the bleachers.  If the sections were not lined up correctly, a gap could appear between them as they were pulled out.  If that happened, the sections would have to be pushed back into stacks, repositioned, and pulled back out.  Although the reason is not clear from the record, it is undisputed that on the night of the dance, there was a gap between the two sets of bleachers.

¶4      Among those supervising the dance that evening were Michael Knutson, a school administrator, and Michael Sutter, the District's resource officer.  For a time during the dance, Knutson and Sutter sat together near the top of the bleachers to observe the students.  As a large group of students entered the gym, Knutson suggested to Sutter that they move down to the floor of the gym.  As Knutson stood up and moved to the aisle in the middle of the bleachers to walk down the steps, his right leg fell into the gap between the sections up to his knee.  The men estimated the gap to be between five and eight inches wide.  Both men

described the gym as dark, and neither saw the gap before Knutson fell in it. Sutter attempted to pull the bleachers apart, but they "didn't move very much." He then helped Knutson "reposition his body to take the torque off of [his] leg" and remove it from the gap.

¶5    Upon learning that Knutson had fallen, several students and staff members began moving up the bleachers to help. Among them was Cindy Rogers, who worked at the school as a nurse. Knutson estimated that Cindy arrived ten to fifteen minutes after his fall. She asked Knutson about his injuries, and after about fifteen minutes, Knutson was ready to stand up and walk down the steps. As he prepared to do so, Cindy stepped to her right to make room and immediately fell into the gap up to her armpits, sustaining a contusion to the ribs and bruising from her armpit down to her knee. Cindy had not noticed the gap before she fell into it, and Knutson had not shown her where it was.[3]

## PROCEDURAL HISTORY

¶6    The Rogerses filed suit on September 9, 2017 against Tasc, its insurer Acuity, the District, and the ASU Group, the purported insurance carrier

---

[3] Whether Knutson told Cindy that he had fallen into a gap in the bleachers before Cindy fell is not clear from the record. At her first deposition, Cindy described the events of the evening and, in that narrative, did not testify that Knutson told her he fell into a gap in the bleachers before she fell. Later in the deposition, however, she testified that when she first reached Knutson, he told her he "fell through the gap. My knee really hurts." Cindy also testified that right after she fell, Knutson said that he had fallen in the same gap as her. At her second deposition, Cindy again testified that Knutson told her he fell in the gap before her fall but did not point to it or identify it.

Knutson initially testified at his deposition that he did not remember any conversation with Cindy, but when told that "[Cindy's] testimony was that you had said you had fallen in a gap. Does that sound about right?," he responded, "Yeah."

for the District.[4]  The Rogerses asserted two claims—violation of Wisconsin's Safe Place statute, WIS. STAT. § 101.11, and negligence.

¶7  The Rogerses served the District on October 6, 2017, by delivering copies of the summons and complaint to Daren Sievers, the District's Superintendent.  The District failed to timely serve and file an answer.  In May 2018, roughly six months after the answer was due, the Rogerses filed a motion for default judgment against the District.  The District did not file a response to the motion.  The circuit court granted default judgment against the District as to the issue of liability on July 17, 2018.

¶8  On January 11, 2019, the District filed a motion to vacate the default judgment under WIS. STAT. § 806.07(1)(a) and (h) and a motion to enlarge the time to file its answer under WIS. STAT. § 801.15.  In an affidavit filed with the motion, Sievers explained why the District had not timely answered the complaint.  According to Sievers, he mistakenly believed that Cindy was making a worker's compensation claim, as Knutson had.  (Cindy was not in fact a District employee.)  The District's insurance agent advised Sievers that the District would not have a liability defense and that the cost to hire a lawyer would likely exceed the value of the claim.  Sievers also claimed that his attention during that time was occupied by a significant District construction project and another legal matter involving a former teacher.  The District argued that these circumstances amounted to excusable neglect and justified an extension of time to answer.

---

[4] The ASU Group was voluntarily dismissed because it was not the insurance carrier for the District.  Tasc and Acuity were dismissed by stipulation in January 2019.

¶9 In a written decision, the circuit court granted the District's motions. The court concluded that the District had met its burden of proof under WIS. STAT. § 806.07(1)(h), which allows for relief for "[a]ny other reasons justifying relief from the operation of the judgment." The court adopted the District's analysis of the factors from *Miller v. Hanover Insurance Co.*, 2010 WI 75, ¶¶44-59, 326 Wis. 2d 640, 785 N.W.2d 493, that apply to requests for relief under § 806.07(1)(h) and concluded that extraordinary circumstances existed to grant relief from the default judgment.[5] In addition, the court described the relevant facts as "straightforward and not in dispute." The court noted specifically "that 'excusable neglect' does not have to be established under § 806.07(1)(h)." Following the court's decision, the Rogerses did not object to the court's having granted the District's motion without first holding a hearing.

¶10 In June 2020, the District moved for summary judgment, arguing that "[t]he manner in which the District arranged for the bleachers to be set in place was discretionary in nature" thus entitling the District to governmental immunity under WIS. STAT. § 893.80(4). *See Knoke v. City of Monroe*, 2021 WI App 6, ¶4, 395 Wis. 2d 551, 953 N.W.2d 889 (2020) (stating that § 893.80(4)

---

[5] The factors are

> whether the judgment was the result of the conscientious, deliberate and well-informed choice of the claimant; whether the claimant received the effective assistance of counsel; whether relief is sought from a judgment in which there has been no judicial consideration of the merits and the interest of deciding the particular case on the merits outweighs the finality of judgments; whether there is a meritorious defense to the claim; and whether there are intervening circumstances making it inequitable to grant relief.

*Miller v. Hanover Ins. Co.*, 2010 WI 75, ¶36, 326 Wis. 2d 640, 785 N.W.2d 493 (citation omitted).

"immunizes governmental entities from suit for 'any acts that involve the exercise of discretion'" (citation omitted)). In their opposition to the District's motion, the Rogerses argued that an exception to immunity for known and obvious dangers applied because Knutson knew of a dangerous condition—the gap in the bleachers—after he fell through it and did not take any action to prevent others from being injured by it.

¶11 The circuit court initially denied the District's motion because, in its view, the record contained issues of material fact relevant to the application of the immunity statute. It did, however, conclude that the known danger exception to governmental immunity did not apply, though it did not provide reasons for this conclusion. In a supplemental order issued after the parties submitted additional evidence, the court concluded that the District was entitled to immunity under WIS. STAT. § 893.80(4). The court reiterated its conclusion that the known danger exception did not apply, explaining that "[t]he fact that bleachers can be dangerous under some circumstances is not sufficient to establish a known and present danger as that concept is defined under the law."

### STANDARD OF REVIEW

¶12 We review the circuit court's grant of summary judgment de novo. *Phoenix Contractors, Inc. v. Affiliated Cap. Corp.*, 2004 WI App 103, ¶9, 273 Wis. 2d 736, 681 N.W.2d 310. Summary judgment is appropriately granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.*; WIS. STAT. § 802.08(2). We must view the facts in the light most favorable to the Rogerses and construe all reasonable inferences against the District. *See Lambrecht v. Estate of Kaczarczyk*, 2001 WI 25, ¶23, 241 Wis. 2d 804, 623 N.W.2d 751.

¶13    The decision to grant relief from judgment under WIS. STAT. § 806.07(1)(h) is reserved to the discretion of the circuit court, which we review under the erroneous exercise of discretion standard. ***Sukala v. Heritage Mut. Ins. Co.***, 2005 WI 83, ¶8, 282 Wis. 2d 46, 698 N.W.2d 610; ***Hedtcke v. Sentry Ins. Co.***, 109 Wis. 2d 461, 470, 326 N.W.2d 727 (1982). A circuit court exercises discretion by applying the correct law to the relevant facts and providing a reasoned explanation for its decision. *See **Hartung v. Hartung***, 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981). Whether a court applied the correct legal standard in exercising its discretion is a question of law which we review de novo. ***Garfoot v. Fireman's Fund Ins. Co.***, 228 Wis. 2d 707, 717, 599 N.W.2d 411 (Ct. App. 1999).

## DISCUSSION

### I.    The Known Danger Exception

¶14    To begin, we consider whether the circuit court erred in granting summary judgment to the District. The court concluded that the District was entitled to immunity under WIS. STAT. § 893.80(4) and rejected the Rogerses' argument that the known danger exception applied. Based upon our review of the record, we conclude that the undisputed facts before the court show that the exception applied. Thus, the court erred in granting summary judgment.

¶15    WISCONSIN STAT. § 893.80(4) "immunizes municipalities from liability arising out of 'acts done in the exercise of legislative, quasi-legislative, judicial, or quasi-judicial functions.'" ***Engelhardt v. City of New Berlin***, 2019 WI 2, ¶21, 385 Wis. 2d 86, 921 N.W.2d 714. Courts have interpreted this language to extend immunity to any acts by government officials that involve the exercise of

discretion. *Id.*, ¶22. The test for determining whether an act is ministerial or discretionary was described in *Engelhardt* as follows:

> A public officer's duty is ministerial only when it is absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion.

*Id.*, ¶32 (citation omitted). Our supreme court has explained that "circumstances may give rise to such a certain duty, where … the nature of the danger is compelling and known to the officer and is of such force that the public officer has no discretion not to act." *Id.*, ¶33 (citation omitted).

¶16     Relatedly, our supreme court has recognized several situations in which immunity under WIS. STAT. § 893.80(4) is not available, including where a "known and compelling danger[] … give[s] rise to ministerial duties on the part of public officers or employees." *Engelhardt*, 385 Wis. 2d 86, ¶29 (citation omitted). A three-step test must be satisfied for the known danger exception to apply. "First, something must happen to create a compelling danger." *Pinter v. Village of Stetsonville*, 2019 WI 74, ¶51 n.11, 387 Wis. 2d 475, 929 N.W.2d 547. "Second, a governmental actor must find out about the danger, making it a known and compelling danger." *Id.* Finally, "the governmental actor … does nothing and allows the danger to continue." *Id*. The danger must be readily apparent and "nearly certain to cause injury if not corrected"—i.e., an "accident[] waiting to happen." *Engelhardt*, 385 Wis. 2d 86, ¶44 (citation omitted).

¶17     The known danger exception was first applied in *Cords v. Anderson*, 80 Wis. 2d 525, 259 N.W.2d 672 (1977), a case that bears some similarities to the present case. In *Cords*, hikers who were legally using a park hiking trail at night

fell into a deep gorge located on a part of the trail known by the park manager to be particularly hazardous at night. *Id.* at 532-35. Our supreme court concluded that the park manager had an absolute, certain, or imperative duty to either place signs warning the public of the dangerous condition or to advise his superiors of the hazardous condition and ask that the trail be closed. *Id.* at 541. He "knew the terrain at the glen was dangerous particularly at night; he was in a position as park manager to do something about it; he failed to do anything about it." For those reasons, he was "liable for the breach of this duty." *Id.*

¶18    Assuming without deciding that the arrangement of the bleachers is an act that would entitle the District to immunity, the undisputed facts in the summary judgment record here show that each element of the known danger exception is met. For the first element, the condition at issue must be "more than unsafe"; it must be "so severe and so immediate that a specific and immediate response is demanded." *Umansky v. ABC Ins. Co.*, 2008 WI App 101, ¶70, 313 Wis. 2d 445, 756 N.W.2d 601, *aff'd*, 2009 WI 82, 319 Wis. 2d 622, 769 N.W.2d 1. The undisputed facts here establish such a severe and immediate danger. A dangerous condition was created when a gap large enough for a person to fall into was left between two sets of bleachers. The danger created by the gap was exacerbated by the dark conditions in the gym during the dance, which prevented Knutson or any other District representative from noticing the gap before Knutson fell into it. Like the deep gorge in *Cords*, this gap in the bleachers was a compelling danger.

¶19    The second element of the test is also established here. A governmental actor—Knutson—became aware of the dangerous gap in the

bleachers when he stepped into it and injured himself.[6] The gap was not closed after Knutson removed his leg; instead, it continued to exist as Rogers and others climbed the bleachers to assist him. The District contends that "Knutson was not in a position to do anything about the awareness of the hazard" but points to no evidence in the record that supports this point. Knutson remained on the bleachers near the gap after he removed his leg from it for at least fifteen minutes, until he was prepared to walk down the steps. Though he was injured, the District points to no evidence suggesting he could not have asked for the lights in the gym to be turned on, identified the location of the gap to those who were near him, or instructed them to avoid the gap.

¶20 Finally, Knutson failed to take action to prevent others from being injured by the dangerous condition. Though there is evidence in the record suggesting that Knutson described how he had been injured to Cindy before she fell, there is no evidence that he indicated where the gap was, provided any other warning to Cindy or anyone else about the gap, or took any other steps to prevent her from falling as she moved directly into the gap to make way for him to descend the steps. Sutter had attempted to move the bleachers when helping Knutson out of the gap, and when Cindy went through the gap, she fell in up to her armpits. Like the park manager in *Cords*, Knutson's awareness of a gap in the

---

[6] In an amicus brief, the Wisconsin Association for Justice suggests that the District had constructive knowledge of the gap before Knutson fell because similar gaps had appeared on prior occasions in which the bleachers were set up, and the District did not inspect the condition of the bleachers after Tasc had set them in place. Given our conclusion that the record establishes the District's knowledge of the gap from the time Knutson fell into it, we need not address this argument. *See Lakeland Area Prop. Owners Ass'n, U.A. v. Oneida County*, 2021 WI App 19, ¶17, 396 Wis. 2d 622, 957 N.W.2d 605. Likewise, we need not address the application of WIS. STAT. § 893.80(4) immunity to a Safe Place claim.

bleachers wide enough for an adult to fall into gave rise to a duty to warn others about its existence.

¶21 Given these undisputed facts, we conclude that the known danger exception to immunity under WIS. STAT. § 893.80(4) applies to the Rogerses' claims against the District. Accordingly, the circuit court erred in granting summary judgment.

## II. Motion to Vacate Default Judgment

¶22 We next analyze the circuit court's decision to grant the District's motion to vacate the default judgment under WIS. STAT. § 806.07(1)(h). The Rogerses argue that the court erred in granting the District's motion without making a finding of excusable neglect under WIS. STAT. § 801.15(2)(a). They contend that the court needed to make such a finding because the District's answer was not served timely under WIS. STAT. § 802.06(1)(a). *See* § 801.15(2)(a) (stating that if a motion to enlarge time "is made after the expiration of the specified time, it shall not be granted unless the court finds that the failure to act was the result of excusable neglect").

¶23 The circuit court did not err. In *Miller*, 326 Wis. 2d 640, ¶41, our supreme court held that a court may grant relief from judgment under WIS. STAT. § 806.07(1)(h) without first making a finding of excusable neglect. The court relied on *Johns v. County of Oneida*, 201 Wis. 2d 600, 549 N.W.2d 269 (Ct. App. 1996), in which we held that a court did not err in declining to consider excusable neglect in determining whether to grant a default judgment because the court determined that if it entered the default judgment, it "would subsequently reopen the judgment based on the existence of extraordinary circumstances under

§ 806.07(1)(h)." ***Miller***, 326 Wis. 2d 640, ¶45 (alteration in original; quoting ***Johns***, 201 Wis. 2d at 606).

¶24 The same analysis applies here. The circuit court had already entered a default judgment against the District. Even if the court concluded that the District had not shown that its failure to timely answer the complaint was the result of excusable neglect, the court could nonetheless "reopen the [default] judgment based on the existence of extraordinary circumstances under [WIS. STAT.] § 806.07(1)(h)." *See **Johns***, 201 Wis. 2d at 606. Accordingly, the court did not err when it did not make a finding of excusable neglect before granting the District's motion to vacate.

¶25 In their reply brief, the Rogerses assert that under ***Miller***, the circuit court was required to hold a hearing before ruling on the District's motion to vacate the default judgment. *See **Miller***, 326 Wis. 2d 640, ¶34 ("If the facts alleged constitute extraordinary circumstances such that relief may be warranted under [WIS. STAT. § 806.07(1)(h)], a hearing must be held on the truth of the allegations."). We decline to reverse the court's decision on this basis for several reasons.

¶26 First, the Rogerses forfeited this argument because they did not raise it in the circuit court, either by requesting a hearing on the District's motion or by alerting the court after it issued its written decision that a hearing was required. "It is a fundamental principle of appellate review that issues must be preserved at the circuit court. Issues that are not preserved at the circuit court, even alleged constitutional errors, generally will not be considered on appeal." ***State v. Huebner***, 2000 WI 59, ¶10, 235 Wis. 2d 486, 611 N.W.2d 727; *see also **Lamar Co. v. Country Side Rest., Inc.***, 2012 WI 46, ¶31 n.15, 340 Wis. 2d 335, 814

N.W.2d 159 ("As a general rule, we will not consider for the first time on appeal an issue not raised in the circuit court, particularly when, as here, the issue is undeveloped …."); ***Shadley v. Lloyds of London***, 2009 WI App 165, ¶25, 322 Wis. 2d 189, 776 N.W.2d 838 ("It is well-established law in Wisconsin that those issues not presented to the trial court will not be considered for the first time at the appellate level."); ***Thompson v. Ouellette***, 2023 WI App 7, ¶13, 406 Wis. 2d 99, 986 N.W.2d 338 ("As a general rule, a party forfeits an issue or argument if the party fails to raise that issue or argument in a timely manner."); ***State v. Van Camp***, 213 Wis. 2d 131, 144, 569 N.W.2d 577 (1997) (same).

¶27 This rule of law "gives both parties and the circuit court notice of the issue and a fair opportunity to address the objection." ***State v. Ndina***, 2009 WI 21, ¶30, 315 Wis. 2d 653, 761 N.W.2d 612. It also allows a court "to avoid or correct any error with minimal disruption of the judicial process, eliminating the need for appeal." ***Id.*** In addition, the forfeiture rule "prevents attorneys from 'sandbagging' opposing counsel by failing to object to an error for strategic reasons and later claiming that the error is grounds for reversal." ***Id.*** (citation omitted). "Without that incentive to raise legal objections <u>as soon as they are available</u>, the time of lower court judges and of juries would frequently be expended uselessly, and appellate consideration of difficult questions would be less informed and less complete." ***State v. Counihan***, 2020 WI 12, ¶61, 390 Wis. 2d 172, 938 N.W.2d 530 (R. Bradley, J., concurring; quoting ***Freytag v. Commissioner of Internal Revenue***, 501 U.S. 868, 900 (1991) (Scalia, J., concurring)).

¶28 As Justice Rebecca Bradley recently explained, "[f]orfeiture has long been engrained in procedural law." ***Counihan***, 390 Wis. 2d 172, ¶60 (R. Bradley, J., concurring; citing ***Yakus v. United States***, 321 U.S. 414, 444 (1944)

14

("No procedural principle is more familiar … than that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make a timely assertion of the right before a tribunal having jurisdiction to determine it.")); *see also **Clements v. Macheboeuf***, 92 U.S. 418, 425 (1876) ("Matters not assigned for error will not be examined."). "The rule preventing an appellate court from considering an issue not raised in the [circuit] [court] is as old as the common law system of appellate review." ***Counihan***, 390 Wis. 2d 172, ¶60 (R. Bradley, J., concurring; second alteration in original; citation omitted). It is "essential to the orderly administration of justice." ***Id.***, ¶61 (citation omitted). Nevertheless, the appellate courts have, on occasion, provided exceptions to the general rule, such as when constitutional rights are at issue, or the case has been fully briefed and presents only an issue of law. ***Id.***, ¶¶62-63.

¶29 Here, the Rogerses flag the circuit court's failure to hold a hearing in response to the District's citation to ***Miller*** for the legal proposition that a finding of excusable neglect is not required, but they do not explain why their argument is not forfeited or why an exception should apply. Though we have discretion to address a forfeited argument, the Rogerses provided *no reason* to do so.

¶30 A second reason why the Rogerses' argument fails is that they did not raise it until their reply brief. In doing so, they prevented the District from having an opportunity to respond to it before this court. We frequently decline to consider arguments raised in this belated manner. *See*, *e.g.*, ***Mid-State Contracting, Inc. v. Superior Floor Co.***, 2002 WI App 257, ¶5 n.4, 258 Wis. 2d 139, 655 N.W.2d 142 ("If an appellant fails to discuss an alleged error in its main brief, it may not do so in the reply brief."); ***A.O. Smith Corp. v. Allstate Ins. Cos.***, 222 Wis. 2d 475, 492-93, 588 N.W.2d 285 (Ct. App. 1998) (appellate court will not address issues raised for the first time in reply brief).

¶31 Moreover, the Rogerses fail to explain why a hearing would have made a difference when the circuit court, in its written decision, described the relevant facts as "straightforward and not in dispute." *See* WIS. STAT. § 805.18(1) (If a party's substantial rights are not affected, the circuit court error is harmless.)

¶32 Finally, aside from their contention that a finding of excusable neglect was required, the Rogerses did not develop any other challenge to the circuit court's decision to grant relief under WIS. STAT. § 806.07(1)(h). Specifically, the Rogerses have not developed any argument as to why the court erroneously exercised its discretion in granting the motion. *See*, *e.g.*, ***State v. Pettit***, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992) (we decline to address undeveloped arguments).

¶33 In short, the dissent would have this court remand for a hearing that the Rogerses did not request and did not address in their principal brief on appeal, preventing the District from having any say in the matter either before the circuit court or on appeal. The dissent advocates for a remand when, even in their reply brief, the Rogerses did not attempt to explain why their argument was not forfeited, did not provide any reason why we should overlook their forfeiture, and did not explain why a remand would make a difference. We decline to do so.

¶34 As Justice Rebecca Bradley noted, absent a sound basis to overlook forfeiture, doing so raises the appearance that it is a "vehicle for reversal when the predilections of a majority of an appellate court are offended." ***Counihan***, 390 Wis. 2d 172, ¶64 (R. Bradley, J., concurring; citation omitted). Failure to adhere to the general rule and principled application of exceptions "is destructive of the adversary system, causes substantial harm to the interests that the general rule is designed to protect, and is an open invitation to the appellate judges to 'do justice'

16

on ad hoc rather than principled bases." *Id.*, ¶65 (R. Bradley, J., concurring; citation omitted).

¶35 Like the Rogeres, the dissent fails to address the law of forfeiture, much less identify any purportedly applicable exception. Instead, the dissent offers reasons why the circuit court erred on the merits, supplying advocacy the Rogeres failed to provide. This raises each of the concerns that Justice Rebecca Bradley identified in *Counihan*.

## CONCLUSION

¶36 For the reasons explained above, we disagree with the circuit court's conclusion that the District is immune from liability under WIS. STAT. § 893.80(4) and thus reverse the order granting summary judgment to the District. But we see no basis to disturb the court's decision to grant the District's motion to vacate the default judgment under WIS. STAT. § 806.07(1)(h). In light of our conclusion on the immunity issue, we remand this case for further proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

No.    2023AP1867(D)


¶37    GROGAN, J. (*dissenting*).  When a circuit court decides that a motion to vacate a default judgment alleges facts constituting "extraordinary circumstances such that relief *may* be warranted under [WIS. STAT. § 806.07(1)(h)], *a hearing must be held* on the truth of the allegations." ***Miller v. Hanover Ins. Co.***, 2010 WI 75, ¶34, 326 Wis. 2d 640, 785 N.W.2d 493 (emphases added).    Only "*[a]fter* determining the truth of the allegations and upon consideration of any other factors bearing upon the equities of the case [can] the circuit court exercise[] its discretion to decide what relief, if any, should be granted." ***Sukala v. Heritage Mut. Ins. Co.***, 2005 WI 83, ¶10, 282 Wis. 2d 46, 698 N.W.2d 610 (emphasis added); *see also* ***Miller***, 326 Wis. 2d 640, ¶34.  The circuit court here failed to hold a hearing on the District's motion, and there is, therefore, no hearing transcript upon which we can assess whether the circuit court properly exercised its discretion and considered the equities of this case—one of which includes the fact that the Rogerses relied on the default judgment to settle with Tasc.

¶38    At the required hearing, "[t]he party seeking relief bears the burden to prove that extraordinary circumstances exist." ***Miller***, 326 Wis. 2d 640, ¶34. Here, the District had the burden to prove *at the hearing* that extraordinary circumstances existed to warrant relief from a default judgment.  The pertinent facts include:  (1) the District was timely served with the Rogerses' Complaint and did not file its Answer because it thought Mrs. Rogers' claim was for worker's compensation and it was busy with a construction project and another lawsuit; (2) when it received the Rogerses' motion for default judgment six months later,

the District again ignored it and did not respond; and (3) the District waited another six months *after* the circuit court granted the default judgment to file its motion to vacate the default judgment/extend the time to file its Answer. The District waited fifteen months after the case was filed to act.

¶39 The Majority says no hearing is needed because no one asked for it. It apparently believes that a circuit court need not follow the law unless it is specifically asked to follow the law. The Majority also seemingly believes we need not correct an error of law, even though that is our primary function. *See State ex rel. DNR v. Wisconsin Ct. of Appeals, Dist. IV*, 2018 WI 25, ¶43 n.19, 380 Wis. 2d 354, 909 N.W.2d 114 ("The court of appeals' 'primary function is error correcting[.]'" (citation omitted)).[1]

¶40 The District had the burden to prove the truth of its allegations and allow the circuit court to consider the equities, including the fact that the Rogerses settled with other parties knowing it had already secured a default judgment against the District. The law requires the circuit court to hold a hearing if it

---

[1] Instead of correcting the error, the Majority simply blames the Rogerses for failing to demand a hearing in the circuit court and for failing to focus on the hearing requirement in its brief-in-chief. *See Miller v. Hanover Ins. Co.*, 2010 WI 75, ¶34, 326 Wis. 2d 640, 785 N.W.2d 493. But, in the circuit court, it was the *District* that had the burden of proof at the required hearing—not the Rogerses, who had successfully secured a default judgment. And in this court, the Rogerses' argument in its Reply brief was responding to what the District argued in its Response brief. This is an error that should be corrected. Part of this court's error-correcting role is to ensure that a circuit court will not repeat the same error again. Instead of ensuring that this error is corrected, the Majority chooses to let the error stand by saying it was forfeited. Applying the forfeiture rule, however, is a rule of judicial administration; an appellate court has the authority to "disregard a forfeiture and address the merits of an unpreserved issue in an appropriate case." *State v. Counihan*, 2020 WI 12, ¶27, 390 Wis. 2d 172, 938 N.W.2d 530.

2

decides a motion to vacate a default judgment based on WIS. STAT. § 806.07(1)(h). Yet, the Majority faults the Rogerses.[2]

¶41     I also cannot join the Majority's reversal of the circuit court's decision regarding the known and compelling danger exception to governmental immunity. Although it is not necessary for me to fully address the exception, I do question whether the facts in this case rise to the level required by the known and compelling danger exception.

¶42     The circuit court ruled that the gap in the bleachers did not rise to a known and compelling danger. The Majority rejects the circuit court's determination, and in doing so, it expands the known and compelling danger exception. According to the Majority, what is typically considered a rare exception applies based on a five-to-eight-inch gap two-thirds of the way up temporary bleachers where the "government actor" tasked with doing something was an employee who had just injured his knee after he stepped into the gap. This is a far cry from the two known-and-compelling-danger cases the Majority relies on. For example, in *Cords v. Anderson*, 80 Wis. 2d 525, 537, 541-42, 259 N.W.2d 672 (1977), our supreme court held that a 90-foot cliff was a known and compelling danger because the park ranger knew for some time that hikers, particularly at night, could fall off it. And in *Engelhardt v. City of New Berlin*,

---

[2] For example, the Majority faults the Rogerses for "fail[ing] to explain why a hearing would have made a difference when the circuit court in its written decision described the relevant facts as 'straightforward and not in dispute.'" Majority, ¶31. However, the circuit court's conclusion that the facts were "straightforward and not in dispute" was based only on the District's written submission—*not* the facts that may or may not have been further developed had the circuit court held the *legally required hearing*. While it is entirely possible that the circuit court would have reached the same conclusion had it actually held a hearing as opposed to simply accepting the veracity of the District's written assertions in concluding that extraordinary circumstances existed, we will never know.

2019 WI 2, ¶¶2, 6, 385 Wis. 2d 86, 921 N.W.2d 714, our supreme court held that a known and present danger existed where the City allowed an eight-year-old girl—who it knew in advance could not swim—to wander unsupervised at a public pool. The prior knowledge in those cases is clearly distinguishable from that which the Majority concludes existed here, which involved a contemporaneous event where some facts suggest the governmental actor did warn others about the gap in the bleachers.

¶43     I respectfully dissent.